605 A.2d 363

**COMMONWEALTH of Pennsylvania**

v.

**Susan E. WILKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 12, 1991.

Filed March 19, 1992.

James N. Bryant, Millheim, for appellant.

Andrew D. Lyons, Asst. Dist. Atty., Lewisburg, for Com., appellee.

Before OLSZEWSKI, HUDOCK and BROSKY, JJ.

BROSKY, Judge.

Susan E. Wilkins takes this appeal from the judgment of sentence entered following an adjudication of guilt after a *de novo* hearing. The trial court adjudicated Ms. Wilkins guilty of speeding in violation of 75 Pa.C.S.A. § 3362(a)(3) and sentenced her to the payment of a fine and costs following the denial of post-verdict motions.[1]

Ms. Wilkins challenges her conviction in three respects. First, she contends that an "End Speed Zone" sign must be positioned at the terminus of a speed zone, which, she claims, was not the case here. Secondly, Ms. Wilkins avers that no evidence was presented concerning the proper installation of the speed timing device which was used to measure her rate of speed. Lastly, Ms. Wilkins maintains that the speed timing device was improperly utilized within five hundred feet of a speed zone sign indicating a higher speed limit. We affirm.

Ms. Wilkins was traveling through the Borough of Hartleton, Union County, on Route 45 in an easterly direction. She exceeded the thirty-five mile per hour speed limit posted for that particular stretch of Route 45. Officer Smith of the Hartleton Borough Police Department was monitoring the section of Route 45 on which Ms. Wilkins was traveling and clocked the speed of Ms. Wilkins' automobile at forty-six point seven miles per hour. The Officer utilized a device known as Speedchek for this purpose. Officer Smith then stopped Ms. Wilkins and issued a citation charging her with violating Section 3362(a)(3) of the Motor Vehicle Code, 75 Pa.C.S.A. § 3362(a)(3). After a summary hearing before a district justice, Ms. Wilkins was adjudicated guilty of the aforesaid violation and was sentenced to pay a fine and

1. The instant appeal was actually taken from the Order denying post-verdict motions. However, this court, by *per curiam* Order, remanded the case to the trial court for the entry of a judgment of sentence on the docket but retained jurisdiction meanwhile. A judgment of sentence was then duly entered on the docket pursuant to that Order. Therefore, the appeal is properly before us.

costs. Ms. Wilkins appealed her summary conviction to the Court of Common Pleas of Union County. Following a hearing *de novo*, Ms. Wilkins was once again convicted and sentenced to pay a fine and costs. This appeal followed.

At issue number one, Ms. Wilkins contends that the absence of an "End Speed Zone" sign to indicate that the thirty-five mile per hour speed limit was terminating is in violation of the PennDot regulation requiring such posting. *See* 67 Pa.Code § 211.72. The evidence adduced at the *de novo* hearing revealed that although no "End Speed Zone" sign was posted on the section of Route 45 in question, a fifty-five mile per hour speed limit sign was displayed. Ms. Wilkins argues that the absence of an "End Speed Zone" sign along the highway in that area is intended to snare an unwary motorist into a speed trap because, upon sighting a fifty-five mile per hour speed zone sign, as Ms. Wilkins did in this case, the unsuspecting motorist is led to believe that the reduced speed zone (thirty-five miles per hour) has terminated, thereby permitting him/her to accelerate to a higher rate of speed. The motorist then discovers, to his/her chagrin, that, despite the presence of a fifty-five mile per hour speed zone sign, he/she is still subject to a speed check for the reduced speed (thirty-five miles per hour).

At first blush, the argument proffered by Ms. Wilkins presents an alluring case for the grant of relief. This notion is quickly dispelled, however, upon a close examination of the PennDot regulation in question. In part relevant to the case at bar, this regulation provides:

§ 211.72. **Speed limits in other than work areas.**

(a) * * *

(b) *Posting of speed limits.* Requirements for posting shall be as follows:

(i) * * *

(ii) The end of a speed limit along a highway at the point where the speed limit is being increased or de-

creased shall be indicated in accordance with clause (A) or (B):

> (A) A Speed Limit Sign, R2-1, indicating the speed limit on the *following* section of highway shall be placed on the right side of the highway. *The placement of this sign shall satisfy both the requirement to post the end of the previous speed limit and the requirement to post the beginning of the new speed limit* if *one* of the following conditions is met:
> (I) It has been determined through test runs that the following section of highway is safe for travel at 55 miles per hour.
> (II) The maximum speed limit for the following section of highway has been established and speed limit signs are installed along that section of highway.

67 Pa.Code § 211.72. Emphasis supplied.

Ms. Wilkins, however, discounts the applicability of Section 211.72(b)(1)(ii)(A) to the matter at bar because no testimony was introduced at the hearing *de novo* to prove that either one of the conditions set forth in Clause (I) or Clause (II) was met. As such, Ms. Wilkins maintains that the posting of a speed zone in this case is governed, instead, by Section 211.72(b)(ii)(B), which provides, in relevant part: "At all other locations, a Speed Limit Sign, R2-1, indicating the maximum speed limit that is ending, and an End Sign, R2-9, mounted above the R2-1 sign, shall be placed on the right side of the highway." As further support for her position, Ms. Wilkins refers this court to Section 211.72(b)(2) which reads:

> Maximum speed limits established under 75 Pa.C.S. § 3362(a)(2) [relating to the establishment of fifty-five mile per hour speed limits] need not be signed except to indicate the end of a speed limit less than 55 miles per hour and the beginning of a 55 miles [sic] per hour speed limit when paragraph (1)(ii)(A)(I) [of Section 211.72] is met.

As we have noted above, Ms. Wilkins' argument, while initially appealing, is flawed in several respects. First, at

the *de novo* hearing, the Commonwealth introduced its Exhibit No. 3, to which counsel for Ms. Wilkins stipulated. This document was admitted into evidence as a certification from PennDot establishing a thirty-five mile per hour speed limit zone for the section of the roadway on which the Speedchek device was utilized to check the speed of Ms. Wilkins' vehicle. Therefore, on this basis, we hold that the condition of Section 211.72(b)(1)(ii)(A)(II) was satisfied here. This being so, Section 211.72(b)(2) is inapplicable because Section 211.72(b)(1)(ii)(A) provides that the condition of *either* Clause (I) *or* Clause (II) must be fulfilled. Therefore, the posting of the fifty-five mile per hour speed zone sign in lieu of the posting of a separate "End Speed Zone" sign for the thirty-five mile per hour zone satisfied the posting requirement of both the statute [2] and the above regulation.

We will next treat Ms. Wilkins' third issue which she appears to present as an argument in the alternative.

At issue number three, Ms. Wilkins argues that the Speedchek device and the accompanying road strips were utilized in violation of 75 Pa.C.S.A. § 3368(e) because they were positioned within five hundred feet of a sign indicating a higher speed limit, i.e., fifty-five miles per hour. This statutory provision reads in relevant part as follows: "**Distance requirements for use of mechanical, electrical and electronic devices.**—Mechanical, electrical or electronic devices may not be used to time the rate of speed of vehicles within 500 feet *after* a speed limit sign indicating a *decrease* of speed." Emphasis supplied. By the clear import of its language, Section 3368(e) does not permit the speed timing of a vehicle which is within five hundred feet after it has passed a speed limit sign which indicates a *decrease* in speed.

Ms. Wilkins does not dispute that she was driving in excess of the applicable speed limit. She did not at the trial level nor does she now on appeal deny that she was traveling through a posted thirty-five mile per hour speed limit zone. Her argument to this court is not that she was timed

2. 75 Pa.C.S.A. § 3362(b).

within five hundred feet after she had passed, in an easterly direction, a posted thirty-five mile per hour speed limit sign. She does not even contend that she was timed within five hundred feet *after* passing a thirty-five mile per hour speed limit sign. Were this the case, Ms. Wilkins would be entitled to relief. Instead, she attempts to apply Section 3368(e) to two different and alternative theories.

First, Ms. Wilkins alleges that the speed timing device was utilized within *two hundred to three hundred feet before* the approach of a sign posting an *increased* speed limit of fifty-five miles per hour. Her argument, in essence, is that the five hundred foot prohibition of Section 3368(e) applies in either direction (i.e., either before or after a speed zone sign) and without regard to whether the speed limit sign indicates an increase or a decrease in the speed limit for the roadway following. However, the language of the statute does not lend itself to the interpretation suggested by Ms. Wilkins. It should be apparent to anyone reading the statute that it protects a motorist only when his/her speed is timed for any distance *short of five hundred feet and* only *after* the motorist *has passed* a sign indicating a *decrease* in the speed limit. Section 3368(e) is not designed to shield a motorist who increases his speed when he/she is still within a reduced speed zone merely upon sighting an increased speed limit sign any number of feet beyond his/her immediate vantage point.

Section 3368(e) appears to serve a two-fold purpose: One, it gives a motorist traveling from a higher speed zone limit into a lower speed zone limit, after having passed a decreased speed limit sign, a five hundred foot allowance within which to decrease his/her speed in conformity with the speed limitation sign. Secondly, it guards the unwary motorist against speed traps by providing for a five-hundred foot allowance after having passed a reduced speed zone sign. Therefore, the statute does not operate to prohibit a speed check within a certain distance *before* a speed limit sign indicating an *increased* speed limit zone. It only requires that the distance traveled before a motorist

may be speed checked be beyond five hundred feet of a speed zone sign indicating a decrease of speed.

 The fallacy of this argument being readily apparent, Ms. Wilkins then broaches her second, alternate theory. Ms. Wilkins indicates that she was illegally timed within five hundred feet *after* a decreased speed limit sign (thirty-five miles per hour) facing in the *opposite* direction, i.e., westwardly, across the road. Ms. Wilkins' argument in this regard is that, for the purpose of applying Section 3368(e), the direction in which the decreased speed limit sign is facing is irrelevant. The trial court, in its Opinion written pursuant to Pa.R.App.P. 1925(a), characterized this interpretation as an attempt to stand the statute on its head. We agree with the trial court's characterization of this argument. Moreover, the position urged upon us by Ms. Wilkins flies in the face of the several regulations promulgated by PennDot, *viz:* 67 Pa.Code §§ 211.28, 211.30 and 211.72.[3]

Section 211.28 of the regulations provides for the standardization of location of traffic signs and reads in pertinent part: "(a) *Right-hand side.* Standardization of location cannot always be attained in practice; however, the general rule is to locate signs on the *right-hand side of the roadway, where the driver is looking for them."* First emphasis in text; second emphasis supplied. The regulation then provides for an exception to this general rule to allow overhead signs on wide expressways, where lane use control is necessary or when no space is available on the roadside. The regulation also permits the posting of signs in other locations which are considered to be supplementary to signs placed in normal locations, i.e., on the right-hand side of the roadway. These supplemental locations include channelizing islands, the left-hand shoulder of the road where the roadway sharply curves to the right and to the left of the roadway on a multi-lane road where traffic in the

3. Section 3362(b) of the Motor Vehicle Code, 75 Pa.C.S.A. § 3362(b), provides the authority for the adoption of regulations by PennDot for the placement of traffic control signs and devices.

right lane may obstruct signs posted on the right side of the roadway.

Section 211.30 concerns the installation of traffic signs and provides in subsection (c)(1) as follows: "(c) *Erection.* Erection requirements shall be as follows: (1) Normally, signs should be mounted approximately at right angles *to the direction of, and facing, the traffic that they are intended to serve."* First emphasis in text; second emphasis supplied.

Finally Section 211.72, which has been partially set out elsewhere in this Opinion, provides for the location of speed limit signs. Section 211.72(b)(1)(i) reads, in part: "A Speed Limit Sign, R2–1, indicating the maximum speed limit shall be placed *on the right side of the highway....*" Emphasis supplied. Similarly, subsection (ii)(A) provides, in part: "A Speed Limit Sign, R2–1, indicating the speed limit on the following section of the highway shall be placed *on the right side of the highway."* Emphasis supplied.

In sum, none of the above regulations supports Ms. Wilkins' second, alternate theory. None provides for the posting of traffic signs on the side of a roadway opposite from which a motorist is traveling. We cannot imagine, nor do the regulations contemplate, that a motorist would adhere to traffic signs posted on the side of a roadway intended for traffic flowing in the opposing direction. Such expectation flies in the face of common sense and is contrary to the Motor Vehicle Code and to the regulations promulgated thereunder.

■ Lastly, Ms. Wilkins maintains that no evidence was introduced that the Speedchek device used to time her speed was properly installed pursuant to PennDot regulations. She specifically asserts that no evidence was adduced that the strips accompanying the dashboard component of the Speedchek device were placed on the roadway five feet apart from each other. Ms. Wilkins does not raise any issue concerning approval of this device by PennDot for the

purpose of speed detection, nor does she point to any impropriety concerning the testing of the equipment.

Unfortunately for Ms. Wilkins, her argument fails for lack of evidentiary support. First, it is contradicted by the testimony of Officer Smith, who operated the Speedchek device in this case. Officer Smith described the Speedchek as "a device set up on the dash of the patrol car with two tapes laid across the roadway *five foot* [sic] *apart."* N.T., 5; emphasis supplied.

Secondly, the Commonwealth introduced into evidence a document from the Commonwealth Department of General Services entitled "Report of Test for Linear Measures" which certified that the linear measurement for the Speedchek tapes conforms to the specifications of the Linear Measure Code of the National Institute of Standards and Technology (NIST) "and are correct for law enforcement applications." Commonwealth Exhibit No. 2. The linear measurement which the Department of General Services certified as being in conformity with the NIST standards is five feet. *Id.* Significantly, counsel for Ms. Wilkins stipulated to the introduction of this Exhibit into evidence and never questioned the correctness of the information contained therein. Nor did counsel for Ms. Wilkins challenge the testimony of Officer Smith concerning his description of the Speedchek device and, in particular, the placement of the accompanying tapes across the roadway.[4] Therefore, we are unable to conclude that relief is warranted here.

Judgment of sentence affirmed.

---

[4] Since counsel failed to object to the admission of Exhibit No. 3 and did not cross-examine Officer Smith concerning the placement of the Speedchek tapes, we could consider this matter waived even though it was raised in post-verdict motions. *See* Pa.R.Crim.P. 1123(a).