**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Joseph GLASS, Appellant.**

Superior Court of Pennsylvania.

Argued June 5, 2012.

Filed July 9, 2012.

Reargument Denied Sept. 7, 2012.

Burton A. Rose, Philadelphia, for appellant.

Stephen B. Harris, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., LAZARUS, J., and COLVILLE, J.*

OPINION BY STEVENS, P.J.

Joseph Glass (hereinafter "Appellant") appeals from the Judgment of Sentence entered in the Court of Common Pleas of

* Retired Senior Judge assigned to the Superior Court.

Bucks County on February 10, 2011, at which time he was sentenced to an aggregate term of ten (10) years to twenty-four (24) years in prison along with restitution in the amount of $198,916.32 following his convictions of Arson[1] and Recklessly Endangering Another Person.[2] Upon our review of the record, we affirm.

In its Opinion, the trial court aptly summarized the facts and procedural history herein as follows:

On July 26, 2010, [Appellant] was charged with intentionally starting a fire at his home in Upper Southampton Township, Bucks County, thereby placing his thirty-five-year-old wife and their two children, ages five and seven, in danger of death or bodily injury. On January 14, 2011, following a four-day trial by jury, [Appellant] was convicted of Arson[1] and three counts of Recklessly Endangering Another Person.[2] On February 10, 2011, [Appellant] was sentenced to an aggregate sentence of 10 to 24 years in a state correctional facility and restitution in the amount of $198, 916.32. On April 13, 2011, [Appellant's] Motion to Reconsider Sentence was denied. [Appellant] thereafter filed a timely appeal from the judgment of sentence.

The history of this case began in the summer of 2009. At that time, Mrs. Glass learned that [Appellant] was having an affair with one Julie Luther. When she found out, she asked [Appellant] to leave. [Appellant] moved out of the family home. In August of 2009, Mrs. Glass allowed [Appellant] to move back into the home believing that the couple had reconciled.

On the evening of December 19, 2009, [Appellant], Mrs. Glass and their two young children were at home. After Mrs. Glass and the children went to sleep, [Appellant] left the residence and met Julie Luther at a local bar. Ms. Luther testified, that despite [Appellant's] statement to his wife regarding reconciliation, she and [Appellant] had continued their affair. At approximately 1:00 a.m. on December 20th, Mrs. Glass woke up and realized her husband was not home. When she called him on his cellular telephone she learned that [Appellant] was with Ms. Luther.

When [Appellant] subsequently returned home from the bar, an argument ensued. Mrs. Glass insisted that [Appellant] was having an affair and demanded that he "get out." [Appellant] continued to deny that he was with Ms. Luther and continued to deny that he was having an affair. After arguing for some period of time, Mrs. Glass fell asleep. [Appellant] again left the residence. This time he went to Luther's residence where he remained for several hours. He ultimately returned home and went to sleep at approximately 7:30 a.m.

At approximately 9:00 a.m., Mrs. Glass awoke and again demanded [Appellant] leave the residence. [Appellant] continued to deny the affair. As the two continued to argue, [Appellant] called 911. Police responded to the residence and spoke to both parties. [Appellant] ultimately agreed to leave the property. Despite that agreement, shortly after the police left, [Appellant] returned and entered the home. Mrs. Glass again demanded he leave. After [Appellant] left the home, Mrs. Glass locked the doors to the residence. [Appellant], however, did not leave the property. He retrieved a spare key to the door

---

**1.** 18 Pa.C.S.A. § 3301(a)(1)(i). **2.** 18 Pa.C.S.A. § 2705.

leading into the basement from the garage, unlocked the door and entered the residence. He remained in the garage/basement area for approximately five minutes. He then walked out of the residence, got into his vehicle and left the property.

After [Appellant] left the property, Mrs. Glass remained inside the residence. The two children went outside to play in the snow. While Mrs. Glass was still standing [in] the kitchen speaking on the telephone, her seven-year-old daughter appeared and told her that "the heater's smoking." Mrs. Glass's daughter then led her into the living room to show her what she had seen. There Mrs. Glass observed smoke pouring from the baseboard and through the carpets. Mrs. Glass immediately called 911 and screamed to her daughter to get out of the house. Ms. Glass ultimately fled the residence in a t-shirt and a pair of sweat pants. Mrs. Glass and her children escaped the blaze without injury.

As the house burned, [Appellant] delayed returning to the residence for a significant period of time despite multiple calls from [Appellant's] siblings advising him that his home was on fire. [Appellant's] cell phone records established that he made no calls to check on the welfare of his family.

While attempting to extinguish the fire, two firefighters became trapped in the residence and were forced to issue a "mayday" call. Due to the efforts of other firefighters, they were successfully rescued from the burning building. The firefighters were ultimately able to extinguish the fire. The residence, a one story ranch style home, suffered extensive fire damage. The main floor of the home partially collapsed into the basement. Subsequent investigation revealed the fire was incendiary in nature and originated in the basement of the home.

After the fire, [Appellant] was interviewed by police and insurance company investigators. [Appellant] admitted at trial that he lied on multiple occasions during both of the investigations.

_____

1. 18 Pa.C.S. § 3301(a)(1)(i).
2. 18 Pa.C.S. § 2705.

Trial Court Opinion, filed 7/22/11, at 1–4.

In his brief, Appellant raises the following three (3) issues for our review:

1. Did the lower court abuse its discretion in refusing to allow the complaining witness, Bobbi Glass, to be cross-examined regarding her use of psychotropic medications with alcohol at the time of the incident and at the [sic] time of her testimony at trial?

2. Did the lower court abuse its discretion in imposing an excessive, harsh, and unreasonable sentence upon the Appellant?

3. Was Appellant's sentence illegal due to the extent that he received two consecutive terms of imprisonment for the offenses of recklessly endangering another person after having been sentenced for arson endangering persons?

Brief for Appellant at 3.

Appellant first maintains Mrs. Glass should have been cross-examined concerning her alleged mental illness and use of psychotropic medications to establish that her perception of Appellant's actions on the night of the incident may have been distorted.

■■■■ Our standard of review regarding evidentiary issues is well-settled:

"The admissibility of evidence is at the discretion of the trial court and only

a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Sanchez,* 36 A.3d 24, 48 (Pa.2011) (citations omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Hanford,* 937 A.2d 1094, 1098 (Pa.Super.2007) (citation omitted), *appeal denied,* [598 Pa. 763] 956 A.2d 432 (Pa.2008). Furthermore, "if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." *Commonwealth v. Weakley,* 972 A.2d 1182, 1188 (Pa.Super.2009) (citation omitted), *appeal denied,* [604 Pa. 696] 986 A.2d 150 (Pa.2009).

*Commonwealth v. Fischere,* 2012 WL 1662098, at *5 (Pa.Super. May 14, 2012).

During opening statements, counsel for Appellant informed the jury that it would hear testimony from witnesses who would inform them of "Bobbi's character, that she does have issues with respect to her mental illness, with respect to drinking—" N.T., 1/11/11 at 39–40. At that time, the Commonwealth objected and stated that it was unaware of any such evidence. *Id.* at 40–41. The trial court asked defense counsel to make an offer of proof as to this evidence, after which counsel indicated that she did not have an exact diagnosis for the alleged mental illness. She also explained she was unsure of the names of the specific medication(s) Mrs. Glass may have ingested and of whether Mrs. Glass had been taking any medication on the day in question. *Id.* at 40–43. Counsel further informed the trial court that she had

no expert testimony or other evidence to establish the same, but claimed that if Mrs. Glass were "taking these medications in combination with alcohol that that would have had an effect on her, according to the DSM,[3] and she's not supposed to be doing that." *Id.* at 44–46. Upon finding Appellant had not presented a proper evidentiary foundation, the trial court ruled that while defense counsel may question Mrs. Glass about her imbibing alcohol and the effects of it upon her that evening, counsel could not inquire as to her alleged mental illness or any medications which she may have ingested at that time, as such questioning may cause the jury to speculate a combination of alcohol and drugs may have influenced her perception. *Id.* at 47–49.

Prior to Mrs. Glass's cross-examination, defense counsel made a second offer of proof at which time she represented the former had indicated during her deposition testimony she was taking "Lexapro and Trazodone." When asked at that time whether alcohol affects her differently because of those medications, Mrs. Glass responded that she "did not believe so." N.T., 1/11/11 at 90–93. Once again, defense counsel admitted she had no evidence to rebut that statement or to show the medications would have affected Mrs. Glass's ability to perceive clearly or recall the events surrounding the fire. The trial court determined the prejudice of presenting such testimonial evidence at trial would outweigh any probative value and permitted counsel to inquire only as to the impact alcohol had upon Mrs. Glass's cognitive abilities on the night in question. *Id.* at 92.

Finally, the issue was again raised on the last day of testimony, at which time counsel claimed she believed Mrs. Glass had been diagnosed as being bipolar and

---

**3.** Diagnostic and Statistical Manual of Mental Disorders.

had been admitted to Horsham Clinic for eleven days in 2008 where she received some therapy. N.T., 1/13/11 at 574–577. However, counsel still was unable to establish the specific conditions surrounding the alleged hospitalization or whether Mrs. Glass had ingested the medications on the day of the fire.

▇▇▇ Upon our review of the record, we find the trial court did not err in disallowing any cross-examination concerning Mrs. Glass's mental health or use of prescription medications in light of the lack of evidentiary foundation for such testimony. The trial court correctly determined that "[t]he only competent evidence presented to the [c]ourt was Mrs. Glass'[s] deposition testimony that the medication had no impact on her intellectual functioning." Trial Court Opinion, filed 7/22/11, at 6. Indeed, Appellant failed to present evidence of Mrs. Glass's precise mental health diagnosis, the specific medications she may have taken at the time in question or the effect they may have had upon her cognitive functioning. Moreover, Appellant has failed to establish how the trial court's ruling prejudiced him, because the court did permit counsel to cross-examine Mrs. Glass regarding her admitted intoxication from alcohol consumption and its effect upon her perception in the hours before the fire. Opinion at 7–8. As the trial court notes in its Opinion,

[d]espite [Appellant's] frantic efforts to introduce evidence of Mrs. Glass'[s] mental health treatment and her use of prescription medications, her perception and recollection were not really at issue at trial. A comparison of the testimony of Mrs. Glass and [Appellant] demonstrates that there was not much discrepancy concerning the salient facts. The only important area where their testimony diverged was whether or not [Appellant] re-entered the home immediately prior to the fire. Mrs. Glass said he did. [Appellant] said he did not because the door was locked. A firefighter who arrived on scene testified that the door in question was not locked when he arrived. This discrepancy is not one of perception but one of truthfulness. The ultimate issue before the jury was whether [Appellant] started the fire. Mrs. Glass was not a witness to that event.

*Id.* at 8–9. We agree with the trial court's analysis and, therefore, find no abuse of discretion.

▇▇▇ Appellant next maintains that his sentence was excessive, harsh and unreasonable and substantially outside the sentencing guideline range. This claim challenges the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue:

[W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa. R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. Pa. R.A.P. 2119(f).

"The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases.'"

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

*Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super.2008) (some citations omitted).

*Commonwealth v. Lewis*, 45 A.3d 405, 410 (Pa.Super.2012).

Herein, Appellant filed a timely notice of appeal and properly preserved this issue in his post-sentence Motion. In addition, Appellant's brief contains the required Rule 2119(f) statement. Thus, we must next determine whether Appellant has stated a substantial question justifying this Court's review of his sentencing claim. *See Phillips*, 946 A.2d at 112.

 In his Rule 2119(f) statement, Appellant alleged that the sentencing court focused on the seriousness of the crimes charged, that the sentencing scheme was contrary to the norms underlying the sentencing process and that his sentence was manifestly excessive and unduly harsh. *See* Brief for Appellant at 8–9. Such claims raise a substantial question, *See Lewis, supra.* Therefore, we will consider the merits of his sentencing claim. Our standard of review of a sentencing claim is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super.2006). In reviewing a sentence on appeal, the appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases[,] the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781.

*Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa.Super.2012). In addition, our Supreme Court has noted that:

"the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than re-

quire a particular sentence." *Walls*,[4] 592 Pa. at 570, 926 A.2d at 964–65. Additionally, to the extent the Superior Court in *Walls* suggested that a defendant must be sentenced to the minimum amount of confinement that is consistent with the protection of the public, gravity of the offense, and rehabilitative needs of the defendant, we rejected that position, noting that the phrase "minimum amount of confinement" had been deleted from the Sentencing Code in 1978. *Id.* at 571, 926 A.2d at 965.

*Commonwealth v. Perry*, 32 A.3d 232, 240 (Pa.2011).

In his brief, Appellant maintains "the sentence for Arson Endangering Other Persons, a sentence of 96 to 240 months, which was double the top end of the aggravated range under the sentencing guidelines, followed by two consecutive sentences of 12 to 24 months, was excessive, harsh and unreasonable under the circumstances." Brief for Appellant at 16. Appellant reasons that Arson Endangering Other Persons included by virtue of its definition potential danger to firefighters and that the trial court "improperly stressed [ ] Appellant's moral failure in having had an affair" and noted that "no one was actually injured or sustained physical harm as a result of this incident." *Id.* at 16–17. Appellant also avers the trial court failed to consider Appellant's "mitigating circumstances" which included his "excellent employment history, lack of a prior criminal record, good role as a father to his two children, evidence of good reputation in the community and support from his family." *Id.* at 17.

In support of his arguments, Appellant relies upon *Commonwealth v. Ritchey*, 779 A.2d 1183 (Pa.Super.2001) wherein a panel of this Court vacated the appellant's sentence of ten years to twenty years in prison and remanded for resentencing following his conviction of one count of aggravated assault. We noted that though the trial court had begun its statement of reasons by stating it had considered rehabilitation, punishment and deterrence of the appellant, it "made no further comment regarding Appellant's personal history, rehabilitative needs or background." *Id.* at 1187. We explained that:

> Our difficulty therefore lies in the [sentencing] court's failure to consider and evaluate, during the sentencing colloquy, the extenuating or mitigating circumstances present in this case. A review of the record demonstrates that, at the time of sentencing, [the defendant] was a young man of twenty-one and, more importantly, that he had had no significant contacts with the criminal justice system. The mental health report indicates that [the defendant] has abused drugs and alcohol from a very young age and that he had been drinking and using drugs on the night of the incident. Additionally, [the defendant] confessed to the crime and subsequently pled guilty, thereby saving the victim's family the pain of hearing the whole story over again. Finally, the presentence investigation concludes that this offense was apparently "situational in nature and not indicative of a persistent problem regarding the subject and his involvement with violent assaultive behavior."

*Commonwealth v. Ritchey*, 779 A.2d 1183, 1188 (Pa.Super.2001).

In the matter *sub judice*, Appellant's conviction for Arson Endangering Persons, a felony of the first degree, carried a maximum sentence of twenty years in prison. 18 Pa.C.S.A. § 1103(1). The sentencing guidelines for that offense pro-

---

4. *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007).

vide for ten months in the mitigated range, twenty-two to thirty-six months in the standard range and forty-eight months in the aggravated range. The three counts of Recklessly Endangering Another Person, misdemeanors of the second degree, carried a maximum sentence of two years in prison. 18 Pa.C.S.A. § 1104(2). The sentencing guidelines for those convictions provided for nonconfinement in the mitigated range, restorative sanctions to one month in the standard range and four months in the aggravated range. The trial court sentenced Appellant to a prison term of eight years to twenty years on the Arson conviction and one to two years on two counts of the Recklessly Endangering Another Person conviction, which were to run consecutive to the Arson sentence and to each other.

Unlike the situation presented in *Ritchey, supra,* the trial court herein clearly expressed its consideration of the seriousness of the crime, rehabilitative needs of Appellant and mitigating circumstances when fashioning its sentence. At both the sentencing hearing and the hearing held on Appellant's motion to reconsider the same, the trial court detailed its reasons for imposing a sentence outside of the sentencing guidelines. *See* N.T., 2/10/11 at 23–20; N.T., 4/13/11 at 36–42. In its Opinion, the trial court summarized its analysis as follows:

> In the instant case, the [c]ourt's discussion of the reasons for imposing a sentence outside the guidelines were set out in great detail both at sentencing [12] and at the hearing on [Appellant's] motion to modify the sentence.[13] This [c]ourt considered all of the aggravating and mitigating evidence offered as it related to the sentencing factors set forth in sections 9721(b), 9722, and 9725 of the Sentencing Code and concluded that the circumstances warranted the sentence imposed.

This [Appellant] set fire to a home which had been in his wife's family for years. It was the home of his wife and his young children. He set the fire at a time when he knew that his wife and children were home. By doing so, he knowingly risked their physical safety if not their lives. He knew that his wife and his children would, if they escaped the flames, watch everything they owned being enveloped in fire and smoke. He knew his children would be watching as the only home they ever knew burned at the hands of their father. He knew such a fire would endanger his neighbors' property and the lives of the firefighters who would respond to try and extinguish the fire. Because of his conduct, two firefighters could have suffered serious bodily injury or lost their lives when they became trapped in the conflagration. It is clear that [Appellant] caused great harm and risked even greater harm. It is also clear that he cannot compensate the victims for the injuries which he intentionally inflicted. All of these circumstances and others as set forth in the record led this [c]ourt to conclude that the gravity of the offense as it related to the impact on the lives of the victims and the community and the protection of the public required imposition of a lengthy period of incarceration. Any lesser sentence would depreciate the seriousness of the crimes this [Appellant] committed against his family and his community.

In imposing sentence, this [c]ourt also considered the rehabilitative needs of [ ] [Appellant], the need for corrective treatment and the undue risk that that [sic] this [Appellant] will commit another crime. Although [ ] [Appellant] did not have a prior criminal record prior to his conviction in this case, he committed these serious and violent crimes without

provocation, justification or excuse. His crimes were a response to very commonplace domestic issues. He acted for reasons of self-gratification, anger and spite. [ ] [Appellant] demonstrated his complete inability to appreciate the wrongfulness of his conduct. He refused to take responsibility for the domestic disturbance that preceded his crime. He refused to take responsibility for his reckless disregard for the safety of his children by leaving them home alone with an intoxicated person. The [c]ourt considered his conduct on the day of the fire and on the days that followed. [Appellant] lied to the police and to his insurance company and apparently preferred to spend time with his mistress in Ohio rather than dealing with all of the issues facing his family. Evidence produced at sentencing and at the reconsideration of sentencing hearing demonstrated that [ ] [Appellant's] family and friends, with the exception of his twin brother, support him in his deceptive, self-centered, destructive behavior further reducing the likelihood of a successful rehabilitation. Based on these and other circumstances the [c]ourt concluded that the character and circumstances of [ ] [Appellant] and his rehabilitative needs likewise required imposition of a lengthy period of incarceration.

In imposing sentence, this [c]ourt considered the guidelines, but decided it was necessary to depart from them for reasons that were adequate and not foreclosed by the law. The [c]ourt took into account the general standards for sentencing as set forth in 42 Pa.C.S. § 9721(b) and concluded that the gravity of the offenses, the impact of these crimes upon the victim, and the need to protect the public and the rehabilitative needs of [ ] [Appellant] required the sentence imposed.

[12]. N.T. 2/10/11 pp. 23–40.
[13]. N.T. 4/13/11 pp. 36–42.

Trial Court Opinion, filed 7/22/11, at 12–14.

Upon our review of the record, we find the trial court properly considered the sentencing guidelines and thoroughly discussed its reasons for its sentence on the record. Therefore, Appellant's challenge to the discretionary aspects of his sentence is without merit.

■ Lastly, Appellant maintains that to the extent he had been sentenced to terms of imprisonment on the Recklessly Endangering Another Person convictions which were consecutive to the sentence he received on the Arson conviction, his sentence is illegal. Brief for Appellant at 21.

■ At the outset, we note that though Appellant has failed to include this claim in his Statement of Errors to be Complained of on Appeal, a claim that crimes should have merged for purposes of sentencing challenges the legality of his sentence and, thus, cannot be waived. Thus, we are not precluded from reviewing this claim on appeal. *Commonwealth v. Parham*, 969 A.2d 629, 631 (Pa.Super.2009), appeal denied, 605 Pa. 682, 989 A.2d 916 (2010).

> Sentences are appropriate for merger when the same facts support convictions for more than one offense, the elements of the lesser offense are all included within the elements of the greater offense, and the greater offense includes at least one additional element. However, where both offenses require proof of at least one element that is different, the sentences do not merge.

*Id.* at 633 (citations omitted).

As has been stated above, Appellant was charged with one count of Arson and three counts of Recklessly Endangering Another Person. In order to sustain a conviction

for Arson, the Commonwealth must have established beyond a reasonable doubt that the defendant intentionally set a fire on his own property or that of another, which recklessly placed another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire. 18 Pa.C.S.A. 3301(a)(1)(i). To sustain a conviction for Recklessly Endangering Another Person, the Commonwealth must have established beyond a reasonable doubt that the defendant recklessly engaged in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S.A. § 2705.

In support of his argument that his sentence is illegal, Appellant reasons that the convictions arise from "one solitary criminal act, to wit, the act of allegedly setting a fire at [ ] Appellant's residence." Brief for Appellant at 20. To the contrary, our Supreme Court has reasoned as follows:

In *Frisbie*,[5] this Court overruled the notion that "[w]here there is but one act of cause of injury, or death of a number of persons, there is but one injury to the Commonwealth"; we therefore held it permissible for a court "to impose multiple sentences on a defendant for a single act." *Id.* at 465, 485 A.2d at 1099. Thus Frisbie was charged with nine separate counts of recklessly endangering another person due to a single reckless act which endangered nine people, garnering him nine separate consecutive sentences for the nine offenses. We stated that "in resolving the issue of whether a single act which injures multiple victims can be the basis for multiple sentences, our task is to simply determine whether the legislature intended that each injury constitute a separate offense." *Id.* at 466, 485 A.2d at 1100.

In construing 18 Pa.C.S. § 2705, recklessly endangering another person, the *Frisbie* court concluded that the offense was defined "with respect to *an individual person* being placed in danger of death or serious bodily injury, and that *a separate offense is committed for each individual person placed in such danger.*" *Id.* (Emphasis supplied.) Similarly, in *Commonwealth v. Williams,* 514 Pa. 124, 130, 522 A.2d 1095, 1098 (1987), we held that an attempt to murder three people by a single act of arson would constitute three separate offenses of attempted murder, for criminal homicide is defined as causing "the death of *another human being.*" (Emphasis added.) The same is true of simple assault, prohibited by 18 Pa.C.S. § 2701(a)(3), which states that a person commits assault if he "attempts by physical menace to put *another* in fear of imminent serious bodily injury." (Emphasis added.) With respect to crimes defined in such language, the number of offenses depends on the number of victims rather than on the number of acts committed by a defendant.

*Commonwealth v. DeSumma,* 522 Pa. 36, 559 A.2d 521, 523 (1989) (emphasis in original).

Appellant was charged with three, separate counts of Recklessly Endangering Another Person, one for Appellant's wife and for each of his two children. As such, the number of offenses of which Appellant may have been convicted herein depends upon the number of his victims, three, not his singular act of Arson.

Appellant also stresses that the trial court instructed the jury that for it to convict Appellant of Arson, it would need to find he recklessly placed his wife and two children in danger of death or serious

---

5. *Commonwealth v. Frisbie,* 506 Pa. 461, 485 A.2d 1098 (1984).

bodily injury, and that it would need to find he recklessly placed these same individuals in danger of death or serious bodily injury to convict him of the Recklessly Endangering Another Person charges. Brief for Appellant at 20–21.

A review of the record reveals the trial court instructed the jury that the Commonwealth had charged four, separate criminal offenses the first of which was Arson. The trial court explained, *inter alia,* that "the Commonwealth must prove that [Appellant] thereby recklessly placed another **person** in danger of death or bodily injury" (emphasis added). While it noted that the Commonwealth had referenced three individuals, Appellant's wife and children, whom Appellant allegedly placed in that danger, it again stated that "[t]he Commonwealth need only prove that he intentionally started a fire and that he recklessly placed another **person** in danger of death or bodily injury." (emphasis added). N.T., 1/14/11 at 790–791. When the jury asked to be re-instructed as to the elements of the charged crimes, the trial court once again indicated to the jury that a conviction for Arson required proof that the accused must have "recklessly placed another **person** in danger of death or serious bodily injury." (Emphasis added). *Id.* at 803–804.

At the time of sentencing, the trial court recognized that one of the Recklessly Endangering Another Person convictions would merge for sentencing purposes, as recklessly endangering is part of the Arson crime. N.T., 2/10/11, at 37. It sentenced Appellant on only Counts Three and Four of the Criminal Information as they involved two other victims. *Id.* at 38. We find no error.

Judgment of sentence affirmed.