**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DEONTE SATCHELL | |
| Appellee | No. 610 EDA 2014 |

Appeal from the Judgment of Sentence July 12, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004850-2011

BEFORE:  DONOHUE, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:                    **FILED MARCH 09, 2015**

The Commonwealth appeals from the July 12, 2013 judgment of sentence, imposing an aggregate term of time served, *i.e.* 167 days', to two years less one day's incarceration plus seven years' probation on Appellee, Deonte Satchell, following his conviction by a jury for rape, involuntary deviate sexual intercourse (IDSI), and simple assault.[1]  After careful review, we affirm.

The trial court provided the following summary of the facts of this case.

> [Appellee] was charged with rape and related offenses following an incident that occurred on June 20, 2011.  The victim and [Appellee] were/are boyfriend and girlfriend.  This incident occurred at

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), and 2701(a)(1), respectively.

the Barkley Square Apartments, located at 1600 Garrett Road in Upper Darby. Prior to this incident, [Appellee] and [the] victim had been dating for more than a year. The two had been living together for several months before this incident. During their relationship, the victim had become pregnant by [Appellee] with a set of twins, but had suffered a miscarriage twenty-one weeks into her pregnancy. This miscarriage occurred on January 26, 2011, approximately five (5) months before the crime. Both the [Appellee] and victim had a difficult time dealing with the miscarriage.

On the night before this incident, [Appellee] and victim argued and victim told [Appellee] that she wanted to break up with him. This was because she believed that [Appellee] was being unfaithful. [Appellee] also believed that the victim was being unfaithful. The two wanted to examine each other's cell phones for text messages containing any evidence of their alleged infidelity.

On the night of June 20, 2011, [Appellee] and victim continued to argue and each accused the other of infidelity. They were also arguing about cooking, and [Appellee] was planning to leave the apartment. Before he did so, [Appellee] asked the victim if she would "give him some." She did not realize that [Appellee] was referring to sex, and thought that he was referring to food. She explained that she wasn't feeling too well and didn't feel like cooking, so she replied "no." [Appellee] became angry at her refusal, turned around, and approached her, saying that he "wanted it now." In fear, she backed into a sliding-glass door. [Appellee] then grabbed her arms and began to drag her into the bedroom, a distance of "10 [to] 15 feet." [Appellee] also smacked her wrists. The victim continued yelling and saying "no," and [Appellee] repeatedly said that he "wanted it now." In vain, she tried to pull herself away from [Appellee].

After [Appellee] got her into the bedroom, he forced her to perform oral sex on him. [Appellee]

- 2 -

raised his hand and yelled at her. She did not want to perform oral sex on [Appellee], and only did so because of his anger and also out of fear that he would hit her. [Appellee's] penis did enter her mouth.

At some point, [Appellee] told the victim to get on the bed. During this time, she told [Appellee] to stop. When [Appellee] asked her to take off her pants, she refused. [Appellee] then pulled off her pants. [Appellee] then vaginally penetrated her with his penis. She did not want to have intercourse with [Appellee].

[Appellee] told her that he "want[ed] to get [her] pregnant again." [Appellee] continued having intercourse with the victim until he ejaculated. Soon after, [Appellee] said that "he didn't want to do this anymore." [Appellee] then left the victim alone in the room. Later, [Appellee] told her that he loved her and told her to stop crying. [Appellee] then tried to give her a hug. No weapons were used at any time by either person.

The victim called 911 from the apartment. She then went to Delaware County Memorial Hospital. At the hospital, she was examined by a Sexual Assault Nurse Examiner. She also gave a statement to a detective while at the hospital.

Trial Court Opinion, 3/10/14, at 1-3 (citations and footnotes omitted).

Appellee was arrested on June 21, 2011, and charged with the aforementioned crimes and related offenses. The trial court notes that the prosecution proceeded despite the contrary wishes of the victim.

[The victim] immediately began to have doubts about reporting what had happened. Several months after the incident, the victim said that she still cared for [Appellee]. She did not want the case to be prosecuted, and she did not want [Appellee] to go to prison. She testified that she was told that,

- 3 -

> because she had called 911, the case had to be prosecuted. Consistent with her express wishes, she did not appear at the first two scheduled definite trials [sic] dates for [Appellee], and only appeared the third time because a warrant was issued for her arrest.

*Id.* at 3-4.

At the conclusion of a two-day jury trial held February 20-21, 2013, Appellee was convicted of rape, IDSI, and simple assault. Sentencing hearings were held on May 24, 2013, and July 12, 2013, at which latter date Appellee was sentenced to an aggregate term of 167 days' to two years less one day's incarceration plus seven years' consecutive probation. Appellee was not determined to be a sexually violent predator but is required to register for life under the Sexual Offender Registration and Notification Act, 42 Pa.C.S.A. § 9799.15(a)(3).

> Prior to sentencing [Appellee], the victim testified on [Appellee's] behalf. Before imposing its sentence, the [trial] court considered his psychosexual evaluation, presentence investigation, and Megan's Law evaluation. The [trial] court considered the nature and seriousness of the crime, [Appellee's] age, his family status, his vocation, his employment status, statements from the Commonwealth, statements from defense counsel and witnesses, [Appellee's] allocution, and the sentencing guidelines.

Trial Court Opinion at 4 (citations omitted). On July 16, 2013, the Commonwealth filed a motion for reconsideration and modification of

sentence.[2]    The trial court denied the Commonwealth's motion on October 4, 2013.  Thereafter, the Commonwealth filed a timely notice of appeal on November 4, 2013.

On appeal, the Commonwealth raises the following question for our review.

> Did the sentencing judge abuse his discretion by imposing a sentence that was such an extreme departure below even the mitigated range of the Sentencing Guidelines that it was manifestly unreasonable not only because it was not consistent with the seriousness or gravity of the offenses committed, but also because the court's reasons for going so far outside of the Guidelines did not justify such a radical departure[?]

Commonwealth's Brief at 5.

The Commonwealth's issue implicates the discretionary aspects of the sentence imposed by the trial court in this case.  We acknowledge the following criteria guiding our review of this question.

> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal.  An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.
>
> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely

---

[2] Appellee did not file any post-sentence motion but did file a *pro se* notice of appeal on July 19, 2013.  That appeal was dismissed on March 5, 2014, for failure to file a docketing statement in accordance with Pennsylvania Rule of Appellate Procedure 3517.  ***Commonwealth v. Satchell***, 3127 EDA 2013 (Pa. Super. 2014)

notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265-1266 (Pa. Super. 2014) (citations omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014).

Instantly, the Commonwealth's appeal is timely filed, and its issue is preserved in its motion for reconsideration and modification of sentence. Furthermore, the Commonwealth has included in its appellate brief a statement of the reasons relied on for appeal of the discretionary aspects of the instant sentence pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). We therefore proceed to determine if the Commonwealth has advanced a substantial question permitting review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012) (internal quotation marks and citations omitted), *appeal denied*, 63 A.3d 774 (Pa. 2013). "We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. Our inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the facts underlying

the appeal, which are necessary only to decide the appeal on the merits." *Commonwealth v. Gould*, 912 A.2d 869, 872 (Pa. Super. 2006) (internal quotation marks and citations omitted; emphasis in original).

In its Rule 2119(f) statement, the Commonwealth "submits that the trial judge abused his discretion by imposing an excessively lenient sentence outside of the Sentencing Code." Commonwealth's Brief at 11. It further claims the "sentence was not consistent with the seriousness and gravity of the felony offenses," and the trial court "inappropriately relied upon factors already integrated in the formulation of the Sentencing Guidelines for the standard range, typical case of the same offense." *Id.* At 12. The Commonwealth also asserts the trial "court also improperly gave defendant consideration for factors that, if they had existed, would have placed defendant into a higher sentencing guideline range." *Id.* These contentions raise a substantial question permitting our review. *Commonwealth v. Daniel*, 30 A.3d 494, 497 (Pa. Super. 2011) (holding the Commonwealth's allegations, *inter alia*, that a sentence "was unreasonably lenient, was dependent upon improper factors…, [and] disregarded the serious nature of the offenses," posed a substantial question for review). We therefore proceed to a consideration of the merits of the Commonwealth's appeal.

When reviewing the discretionary aspects of a sentence imposed by a trial court, we are heedful of the following principles. "The imposition of sentence is vested in the discretion of the trial court, and should not be

disturbed on appeal for a mere error of judgment but only for an abuse of discretion and a showing that a sentence was manifestly unreasonable." ***Commonwealth v. Williams***, 69 A.3d 735, 740 (Pa. Super. 2013), *appeal denied*, 83 A.3d 415 (Pa. 2014) (citation omitted). "The proper standard of review for an appellate court is to focus on the pertinent statutory provisions in the Sentencing Code, specifically 42 Pa.C.S. § 9781(c) and (d), and 42 Pa.C.S. § 9721(b)." ***Id.*** at 741 (citation omitted).

Section 9781 provides in pertinent part as follows.

**§ 9781. Appellate review of sentence**

…

**(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

…

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.--**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781. "Thus, the statutory unreasonableness inquiry is a component of the jurisprudential standard of review for an abuse of discretion." ***Commonwealth v. Hoch***, 936 A.2d 515, 519 (Pa. Super. 2007) (citation omitted).

Section 9721 provides in pertinent part as follows.

**§ 9721. Sentencing generally**

…

**(b) General standards.--**In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing…. … In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing …, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission…. Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

…

42 Pa.C.S.A. § 9721(b).

> Generally, our review of a sentence [for abuse of discretion] is limited [] to whether the sentencing court explicitly or implicitly considered the section 9721(b) factors, and we may not re-weigh the significance placed on each factor by the sentencing judge. Given such a deferential standard of review, our Supreme Court recognized that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently.

*Williams*, *supra* at 742 (internal quotation marks and citations omitted.) *see also Commonwealth v. Jones*, 565 A.2d 732, 734 (Pa. 1989) (holding that respecting the sentencing "equation, reasonable men can obviously differ and thus the law has seized upon the wise decision to give great deference to the trial judge's decision in this area"). "[T]he appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Zirkle*, --- A.3d ---, 2014 WL 7212598 at *4 (Pa. Super. 2014) *citing*, *Hoch*, *supra* at 517–518.[3]

> In fashioning a sentence, the trial court must impose a term of confinement consistent with the protection of the public, the gravity of the offense as it relates to the impact of the victim and to the community, and the rehabilitative needs of the defendant….

---

[3] With respect to its contention that the trial court abused its discretion, the Commonwealth acknowledges the trial court was "well-intentioned," and gave "plenty of reasons" for the sentence. Commonwealth's Brief at 9. We are focused, therefore, not on whether the trial court acted for reasons of "partiality, prejudice, bias or ill will." *See Zirkle*, *supra* Rather, we are focused on the Commonwealth's claim that the resulting sentence is manifestly unreasonable even in light of the trial court's reasons. *See Id.*

> Although the trial court must consider the Sentencing Guidelines, the court is not obligated to impose a sentence deemed appropriate under the Sentencing Guidelines. At the same time, the trial court cannot justly sentence a defendant unless it possesses sufficient and accurate information about the circumstances of the offense and the character of the defendant to formulate its judgment. In imposing a defendant's sentence, the trial court must state the reasons for the sentence on the record. **As long as the trial court's reasons demonstrate that it weighed the Sentencing Guidelines with the facts of the crime and the defendant's character in a meaningful fashion, the court's sentence should not be disturbed.**

*Commonwealth v. Anderson*, 830 A.2d 1013, 1018-1019 (Pa. Super. 2003) (emphasis added), *quoting* **Commonwealth v. Begley**, 780 A.2d 605, 642-643 (Pa. 2001); **see also Commonwealth v. Crump**, 995 A.2d 1280, 1283 (Pa. Super. 2010) (holding where "the record as a whole reflects that the trial court considered the facts of the crime and character of Appellant in making its determination, we cannot re-weigh the sentencing factors to achieve a different result"), *appeal denied*, 13 A.3d 475 (Pa. 2010). "Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision." **Commonwealth v. Walls**, 926 A.2d 957, 961-962 (Pa. 2007) (citations and footnote omitted).

Instantly, the Commonwealth claims the trial court's reference to the particular circumstances of this case as distinguishing it from other rape

cases "mistakenly removed this case from the heartland (to borrow a federal term) of the typical domestic rape case embodying the conduct that the guideline range describes." Commonwealth's Brief at 15. The Commonwealth asserts that, "[a]lmost every case of domestic violence or domestic sexual assault involves the same dynamic." *Id.* "The Commonwealth submits that the case at bar was typical of the domestic rapes that are encompassed in the Sentencing Guidelines." *Id.* "Moreover, a number of factors relied upon by the court are neither valid nor have any legal efficacy to differentiate this case from the typical conduct associated with a domestic Rape/Involuntary deviate sexual intercourse prosecution." *Id.* at 17-18.

It is undisputed the trial court considered the sentencing guideline recommendations in this case. Commonwealth's Brief at 9. The trial court notes that it "is in no way diminishing the seriousness of [Appellee's] crimes" by remarking on the particular circumstances of the case, especially the personal history between Appellee and the victim, the victim's support for Appellee at sentencing, the mutual desire for potential reconciliation, and the insights offered by the psycho-sexual evaluation of Appellee. Trial Court Opinion, 3/10/14, at 14. In compliance with Section 9721, the trial court assessed the "gravity of the offense **as it relates to** the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b) (emphasis added).

We disagree with the Commonwealth's assertion that the trial court's considerations of the history and relationship between Appellee and the victim made this a "lesser rape" than other scenarios mentioned by the trial court. Commonwealth's Brief at 20. Rather, the trial court was properly assessing the seriousness of the offense in relation to the other statutory sentencing concerns. For example, at the sentencing hearing, the trial court admonished Appellee about the seriousness of his offense. "Rape, by definition, is a serious offense. You asked the [victim] for sex, and she said no. Then you dragged her by her arms to your bed." N.T., 7/12/13, at 9. However, the trial court also noted the particular circumstances of the offense, *e.g.* that the offense was in the nature of domestic violence in the shadow of the personal tragedy of the victim's earlier miscarriage. Trial Court Opinion, 3/10/14, at 13. This was not meant to diminish the seriousness of the offense as claimed by the Commonwealth, but to provide context for weighing the seriousness of the offense against the other sentencing considerations.

Thus the trial court noted the attitude of the victim, who supported leniency at sentencing.

> The victim testified that she does not want anything bad to happen to [Appellee]. She said the same thing prior to trial in a notarized letter to the Court. She wrote that she, "cares about his well being, and does not want to see his life ruined behind bars from never getting the help that was desperately needed." She expressly wrote that she, "did not want [Appellee] to do any jail time."

N.T. 7/12/13, at 5. The trial court also observed the sincerity and intelligence of the victim, noting she was not experiencing "battered victims syndrome" in which some individuals persist in self-destructive choices. *Id.* at 7-8.

The trial court also reviewed the numerous character witnesses attesting to Appellee's good character. "Going to the history and character of [Appellee], … by the victim's own statements, [Appellee] is a good person who made a bad choice, in fact, a criminal choice. This -- his character was corroborated by numerous sentencing witnesses." *Id.* at 10. These witnesses also indicated that Appellee has an extensive support network in the community that even the Commonwealth conceded at the sentencing hearing.

> [BY THE ASSISTANT DISTRICT ATTORNEY]
>
> He has a whole side of the courtroom here who are going to help him set up a parole plan.
>
> …
>
> I'm confident and more than anything else in this case that these people will be able to provide, these good people will be able to provide him a place once he's paroled. I don't think that should be a concern for the Court at all.

*Id.* at 54.

The trial court, further commented on its own observations of Appellee.

> Now another factor, the [trial c]ourt had the opportunity to observe [Appellee]. And that's a fact the [trial c]ourt must consider. The [trial c]ourt did observe [Appellee] at trial and sentencing. Though the Commonwealth argued at sentencing that he was – [Appellee] was feigning remorse, the [trial c]ourt feels otherwise.

Trial Court Opinion, 3/10/14, at 11. The Commonwealth, in its brief, now "accepts that there is a basis for the [trial] court's perspective on the showing of remorse." Commonwealth's Brief at 17.

Finally, the trial court noted the results of the psycho-sexual report of Appellee prepared by Dr. Surbeck. "[The trial] court has read many evaluations by Dr. Surbeck, and has found that she favors extensive post-sentence restrictions. In the case *sub judice*, however, Dr. Surbeck's evaluation was to a certain extent favorable to [Appellee]." Trial Court Opinion, 3/10/14, at 18. The trial court particularly noted "[Appellee] can receive counseling, as Dr. Surbeck said, on the street [], and I think -- he can get the counseling he needs, the counseling, the victim[] believes that he needs so much." N.T., 7/12/13, at 9.

Weighing all these legitimate and statutorily required factors, the trial court concluded "that [Appellee] is [not] such a threat to community that would require a -- the prolonged incarceration asked for by the Commonwealth, and that otherwise could not be addressed by the jeopardy of a long prison sentence while he is on supervision, as a result of any future violations." *Id.* at 10-11.

That the Commonwealth, or indeed that this Court, might weigh those considerations differently is no basis for a determination that the trial court abused its discretion. **See Crump**, **supra**; **Walls**, **supra** at 966 (holding the trial court's generalized statements about the nature of an offense did not preclude a finding based on the record, as a whole, that the trial court imposed the required individualized sentence).

The Commonwealth also claims the trial court relied on factors that do not support mitigation, as they are factors already subsumed in the sentencing guidelines or are collateral consequences. Commonwealth's Brief at 9. "Hence, the fact that a 24 year old man has no prior convictions would not be a reason to go outside of the standard guidelines sentencing range because it has already been counted in the defendant's favor in arriving at the applicable guidelines." **Id.** at 17. "Clearly, the requirement that defendant is a lifetime registrant provides no justification for an extreme downward departure and imposition of a sentence outside of the Sentencing Guidelines." **Id.** at 19. "[Appellee] should not get double consideration regarding his lack of prior convictions." **Id.** "The Commonwealth recognizes and respects the trial court's broad discretion in sentencing. However, this is not simply a case where the court weighed the appropriate sentencing factors, but chose to emphasize certain factors more heavily than others." **Id.** at 21. We disagree.

We do not conclude the trial court "double counted" guideline considerations when it departed from the guidelines. Its mention of Appellee's prior record, the fact no weapon was employed, and the SORNA consequences was, as noted above, to describe the particular circumstances of the case. The Commonwealth parses individual comments made by the trial court out of context to justify a reweighing of the sentencing factors rather than viewing the trial court's entire analysis in light of the whole record.

The fallacy of the Commonwealth's arguments is in supposing that each observation or consideration by the trial court was an attempt to distinguish and or mitigate Appellee's crime, where most of the considerations concerned the rehabilitative needs of Appellee and the impact of the crime of the victim and the community in light of the particular circumstances of the offense. **See** Trial Court Opinion, 3/10/14, 10-15. In reviewing the reasonableness of the trial court's sentence under the factors of Section 9781(d), the circumstances of the offense and character of Appellee, the opportunity of the trial court to observe Appellee and review all relevant considerations, the trial court's findings and the sentencing guidelines, we discern no abuse of discretion by the trial court. **See Anderson**, **supra**; **Crump**, **supra**. Neither do we conclude the sentence is manifestly unreasonable in light of the entire record, including the position of the victim, the results of the psycho-sexual evaluation by Dr. Surbeck, the

contrition displayed by Appellee, and the circumstances of the crime. Accordingly, we affirm the trial court's July 12, 2013 judgment of sentence.

Judgment of sentence affirmed.

Judge Donohue joins the memorandum.

Judge Stabile files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2015