J-A21012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH M. DUMANOV | : | |
| | : | |
| Appellant | : | No. 811 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 2, 2022
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-SA-0000021-2021

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.: **FILED SEPTEMBER 9, 2022**

Joseph M. Dumanov appeals *pro se* from the judgment of sentence, entered in the Court of Common Pleas of Pike County, following his summary conviction for failing to stop at a stop sign in violation of 75 Pa.C.S. § 3323(b).[1] After careful review, we affirm.

_____

[1] Pursuant to section 3323(b):

> **(b) Duties at stop signs. —** Except when directed to proceed by a police officer or appropriately attired persons authorized to direct, control or regulate traffic, **every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line** or, if no stop line is present, before entering a crosswalk on the near side of the intersection or, if no crosswalk is present, then at the point nearest the intersecting roadway where the driver has a clear view of approaching traffic on the intersecting roadway before entering. If, after stopping at a crosswalk or clearly marked stop line, a driver does not have a clear view of approaching traffic, the driver shall after yielding the right-of-way

*(Footnote Continued Next Page)*

On January 30, 2021, Pennsylvania State Trooper Yui Kishenko observed Dumanov, driving a gray 2002 Toyota Tacoma, fail to stop at a stop sign placed at the intersection of the Grand Army of the Republic Highway (the Highway) and the eastbound I-84 off-ramp in Milford, Pennsylvania. Dumanov testified that, on the day of the alleged violation, he was returning to his New Jersey residence after visiting family in Plains, Pennsylvania. Taking a new route home, Dumanov was not familiar with the subject intersection. As he attempted to merge onto the Highway, he looked to his left for approaching traffic and, not expecting to see a stop sign on the right-hand side of the road, proceeded through the intersection without stopping. *See* N.T. Summary Hearing, 3/2/22, at 17 (Dumanov admitting he "went through the stop sign").

Dumanov was found guilty of the summary offense in municipal court and ordered to pay a $144.00 fine. During the summary proceeding the court declined Dumanov's request to introduce documents, photographs, and a video recording into evidence. The evidence allegedly showed the improper

---

to any pedestrian in the crosswalk slowly pull forward from the stopped position to a point where the driver has a clear view of approaching traffic. The driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute a hazard during the time when the driver is moving across or within the intersection or junction of roadways and enter the intersection when it is safe to do so.

75 Pa.C.S. § 3323(b) (emphasis added). The Vehicle Code defines "stop" or "stopping," in relevant part, as "when required, means complete cessation from movement." *Id.* at § 102.

placement of the stop sign at issue, which he claims violates both PennDot regulations and the National Manual on Uniform Traffic Control Devices (MUTCD).

Dumanov[2] appealed his summary conviction to the trial court. At a March 2, 2022 *de novo* hearing, before the Honorable Kelly A. Gaughan, the Commonwealth called Trooper Kishenko to testify about the events underlying Dumanov's vehicle stop. During his cross-examination of the trooper, Dumanov attempted again to introduce documents and pictures to contest the legality of the stop sign. The Commonwealth objected to the relevance of the evidence; Judge Gaughan sustained the objection on the basis that the evidence was beyond the scope of the issue and, thus, irrelevant.

On March 2, 2022, Judge Gaughan dismissed Dumanov's appeal, finding he admitted to not stopping at the stop sign, and affirmed his summary conviction. Dumanov filed a timely appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Dumanov presents the following issues for our consideration:

(1) Did the court err by not addressing [Dumanov's] claims that the stop sign in question is offensive and dangerous due to non-compliance with 23 CFR Part 655.603(a) and (b)(1), several sections of the [N]ational [M]anual on [U]niform

---

[2] Dumanov represented himself during his summary appeal.

[T]raffic [C]ontrol [D]evices (MUTCD),[3] including, but not limited to, sections 1A.08, 2B.04, 2B.09.01(C), and 2B.10.01 and also PennDot LTAP Technical Information sheets #137 (revised Summer/214) and #211 (Spring 2021)?

(2)     Does [the] prosecution of [Dumanov] by the state regarding a traffic sign that the state knew or should have known is in contravention to the MUTCD and other PennDot guidance constitute a denial of fundamental fairness under the [F]ourth and [F]ourteenth [A]mendments of the United States Constitution?

(3)     Did the trial court abuse its discretion in refusing to allow [Dumanov] to introduce relevant evidence demonstrating the offensive positioning and non-compliance of the stop

_____

[3] Pennsylvania has adopted the MUTCD, as published by the Federal Highway Administration.  *See* 67 Pa.Code § 212.212.1.  In general, for placement of traffic control devices, the MUTCD offers the following guidance:

> **Placement of a traffic control device should be within the road user's view so that adequate visibility is provided**.  To aid in conveying the proper meaning, **the traffic control device should be appropriately positioned with respect to the location, object, or situation to which it applies**.  The **location** and legibility **of the traffic control device should be such that a road user has adequate time to make the proper response in both day and night conditions**.

*Id.* at § 1A.04(1) (emphasis added).  Regarding sign placement, the MUTCD states that "[s]tandardization of position cannot always be attained in practice," *id.* at § 2A.16(1), and that "[s]igns **should be** located on the right-hand side of the roadway where they are **easily recognized** and understood **by road users**." *Id.* (emphasis added).  Moreover, under 67 Pa.Code § 212.206(b), "[i]n addition to the warrants for stop signs in the MUTCD (relating to stop sign applications), a Stop Sign (R1-1) may be installed on a channelized right-turn roadway at a signalized intersection where the traffic-control signals are not readily visible, and the right-turn roadway does not have separate signals, and a Yield Sign (R1-2) is not appropriate." Additionally, "stops signs may be installed at all approaches to the through highway to provide preferential right-of-way at intersections." *Id.* at § 212.206 (a)(1).

sign at issue with federal and state regulations and standards?

Appellant's Brief, at 4.

Addressing these issues together for cogency, Dumanov contends the trial court erred by not permitting him to introduce evidence that would have demonstrated the stop sign at issue was did not comply with traffic regulations and standards with regard to its placement at the subject intersection.

> Admission or exclusion of evidence at trial rests within the discretion of the trial court. **Commonwealth v. Glass**, [] 50 A.3d 720, 724-25 (Pa. Super. 2012)[.] We will not reverse the trial court's decision absent an abuse of that discretion. **Id.** "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." **Id.** at 725. "If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." **Id.**

**Commonwealth v. Williams**, 91 A.3d 240, 242 (Pa. Super. 2014).

Moreover,

> [t]he threshold inquiry with the admission of evidence is whether the evidence is relevant. Unless otherwise prohibited by law, all relevant evidence is admissible; all irrelevant evidence is inadmissible. Pa.R.E. 402. The Pennsylvania Rules of Evidence define[] relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401.

**Commonwealth v. Flamer**, 53 A.3d 82, 88 n.5 (Pa. Super. 2012) (some internal citations omitted).

At his summary appeal hearing, Dumanov argued that because the instant stop sign was not properly positioned at the intersection, it impeded

drivers from seeing it in time to stop. N.T. *De Novo* Hearing, 3/2/22, at 22. Specifically, Dumanov testified that as he approached the exit ramp off of I-84, the stop sign was obscured by a "no parking sign and right arrow sign." *Id*. at 14. *See* Defense Exhibits E & F (pictures depicting no parking sign and right arrow sign in front of stop sign as approaching exit ramp to enter Highway).

Under the Vehicle Code, "[w]henever official traffic-control devices are placed or held in position approximately conforming to the requirements of this title, the devices shall be presumed to have been so placed by the official act or direction of lawful authority, unless the contrary shall be established by competent evidence." 75 Pa.C.S. § 3111(c). Thus, although it is presumed that traffic-control devices have been properly placed to regulate traffic, that presumption is rebuttable by competent evidence and which can, in fact, provide a defense to prosecution for traffic-control device violations. *See Commonwealth v. Ansell*, 143 A.3d 944 (Pa. Super. 2016); *see also Commonwealth v. Wilkins*, 605 A.2d 363 (Pa. Super. 1992); *Commonwealth v. Parker*, 567 A.2d 1052 (Pa. Super. 1989).

Under section 3111(b):

(b) Proper position and legibility of device. — **No provision of this title for which official traffic-control devices**[4] **are**

---

[4] Section 102 of the Vehicle Code defines "official traffic control devices" as "[s]igns, signals markings and devices not inconsistent with this title placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic." 75 Pa.C.S. § 102.

**required shall be enforced against an alleged violator if at the time and place of the alleged violation an official device is not in proper position** and sufficiently legible **to be seen by an ordinarily observant person.** Whenever a particular section does not state that official traffic-control devices are required, the section shall be effective even though no devices are erected or in place.

*Id.* (emphasis added). Because section 3111(b) mandates that an individual cannot be found guilty of violating section 3323, even if he admittedly did not stop at a stop sign, where the official traffic-control device is not "in proper position to be seen by an ordinary observant person," we conclude the trial court improperly excluded Dumanov's evidence as irrelevant. *See* Pa.R.E. 401. However, because other relevant evidence supports the finding that the instant stop sign was placed in the proper location on the right-side of the road so that it was within Dumanov's view, giving him adequate time to come to a stop, the court's evidentiary ruling did not amount to reversible error.

At the *de novo* hearing, Trooper Kishenko testified that the stop sign was "clearly visible," and that there were "no trees or any types of shrubbery that's stopping you from seeing that stop sign." N.T. Summary Hearing, 3/2/22, at 7. Moreover, an aerial picture of the subject intersection, attached as Appendix F to Dumanov's appellate brief,[5] clearly shows that there was a

---

[5] The photos admitted as Defense Exhibits E & F were taken from a vantage-point that deceptively gives the viewer the impression that the no parking and red arrow signs completely obscure the subject stop sign. However, the aerial view of the intersection dispels any such notion showing a considerable stretch of roadway between the other signs and the stop sign which would give a driver enough time to see the stop sign, react to it, and properly come to a complete stop.

significant portion of roadway between the no parking and right arrow signs and the subject stop sign making the stop sign able "to be seen by an ordinarily observant person," which supports the fact that the stop sign was "within [Dumanov's] view so that adequate visibility [wa]s provided," 75 Pa.C.S. § 3111(b), and that Dumanov had "enough time to see the sign, react to the STOP condition, and stop [his] vehicle." PennDot LTAP Technical Information Sheet #211, Spring 2012. **See also** MUTCD (2009 ed.) § 1A.04(1), at 2 ("[p]lacement of traffic control device should be within road user's view so that adequate visibility is provided" and "location . . . of the traffic control device should be such that a road user has adequate time to make the proper response in both day and night conditions").

Considering this evidence, coupled with the presumption that the placement of the stop sign is an authorized placement, 75 Pa.C.S. § 3111(c), as well as the applicable regulations under the MUTCD, **see supra** at n.4, we conclude that Dumanov is entitled to no relief. **See** MUTCD (2009 ed.), § 2B.10.01, at 53 (when stop sign installed at required location near right side of intersection, stop ahead sign must be installed in advance of stop sign only when stop sign visibility restricted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2022