J. S20020/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
    :     PENNSYLVANIA
           v.     :
    :
FRANK CASIANO,     :     No. 3560 EDA 2015
    :
        Appellant     :

Appeal from the Judgment of Sentence, November 5, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0013060-2012

BEFORE:  BOWES, J., OTT, J. AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED APRIL 19, 2017**

Frank Casiano appeals from the November 5, 2015 aggregate judgment of sentence of 20 to 40 years' imprisonment, followed by 20 years' probation, imposed after he pled guilty to aggravated assault, burglary, and criminal conspiracy.[1]  After careful review, we affirm.

The trial court summarized the relevant facts of this case as follows:

> The incident in this case took place on May 6, 2012.  The victim in this case is David Phillips, who is forty-three (43) years old.  Mr. Phillips, [a]ppellant and [a]ppellant's co-defendant, Stephen Masten ("Masten") have known each other from affiliations with the Aryan Brotherhood.  Prior to the incident in question, Masten was in prison and heard a rumor that Mr. Phillips, the victim, had been hitting on his girlfriend.  When Masten was released from prison[,] he immediately began threatening Mr. Phillips telling

---

[1] 18 Pa.C.S.A. §§ 2702, 3502, and 903, respectively.

him that he was "going to get touched," meaning something would happen to him.

Two weeks after Masten was released from prison, on May 6, 2012, at approximately 10 p.m. both [a]ppellant and Masten broke into Mr. Phillips's home by kicking in the front door. They proceeded up to Mr. Phillips's bedroom. Mr. Phillips had been sleeping in his bed when [a]ppellant and Masten turned on the lights and both began striking Mr. Phillips with a shovel in his face, stating, "We are going to take all of your shit and CD's [sic]." Both [a]ppellant and Masten repeatedly told Mr. Phillips, "We are going to kill you, mother f[**]ker." Mr. Phillips fell to the ground and was repeatedly hit in the head with a shovel.

Next, Masten straddled Mr. Phillips and tried to choke him and smother him with a pillow. Mr. Phillips began begging for his life when Masten told him, "No, you are dead." Masten struggled to hold Mr. Phillips down so [a]ppellant began kicking Mr. Philips with his boots and punching him repeatedly. Masten then began to gouge out Mr. Phillips's eyes, while [a]ppellant held him down by the waist and legs. Masten said, "His eyes popped out, I killed the bastard." Both Masten and [a]ppellant began to laugh and [a]ppellant said, "Good, kill him good."

Mr. Phillips lost consciousness for a while but eventually was able to drag himself down the stairs and throw himself out a window for help. Mr. Phillips was rushed to the hospital and transferred to Wills Eye for surgery. Mr. Phillips suffered catastrophic injuries. Mr. Phillips received fifty-two staples, stitches to his head, and both eyes were pulled out of his sockets, and the sockets were broken. Mr. Phillips also suffered lacerations and bruising all over his face. He is now permanently blind.

After the incident, [a]ppellant admitted to Wilbur Lauer, a friend[,] that he went to Mr. Phillips's

residence with Masten. Then, [a]ppellant and Masten went to the home of Michael Cook, where Masten asked Cook for a special Christian Aryan patch. Appellant was then given this patch and a ceremony was preformed that is called, getting patched in. Later, [a]ppellant and Masten described to Cook how they had beaten up some guy and went into detail including how they kicked the door in, and how Mr. Phillips had been sleeping. Appellant and Masten also told Cook about how they kicked Mr. Phillips and joked that it was a boot party and that they should have worn painter suits so they don't leave any evidence. Masten told Cook, "I squeezed his f[**]king eyes out and popped them like grapes." Cook noted that both defendants looked like they had recently been involved in a fight.

[Appellant and Masten] also later admitted that they "Got into it with Dave (Mr. Phillips)" to Joseph Hammer, [a]ppellant's cousin. Appellant stated that he was not worried because Masten would take the rap for him.

Trial court opinion, 4/20/16 at 2-4 (citations to notes of testimony omitted).

Appellant was subsequently charged with attempted murder and a litany of other crimes in connection with this incident. On April 6, 2015, appellant entered an open guilty plea to one count each of aggravated assault, burglary, and criminal conspiracy. The remaining charges were ***nolle prossed*** by the Commonwealth. Following the completion of a pre-sentence investigation ("PSI") report and mental health evaluation, the trial court sentenced appellant on July 10, 2015. Specifically, appellant was sentenced to 7 to 14 years' imprisonment, followed by 6 years' probation for aggravated assault; 7 to 14 years' imprisonment, followed by 6 years'

probation for criminal conspiracy; and 6 to 12 years' imprisonment, followed by 8 years' probation for burglary. (**See** notes of testimony, 7/10/15 at 40-41.)[2]

On July 16, 2015, appellant filed post-sentence motions for, **inter alia**, reconsideration of his sentence. On November 5, 2015, the trial court amended its July 10, 2015 sentencing order to note that all the charges were to run consecutively. On November 16, 2015, appellant's post-sentence motions were denied by operation of law, pursuant to Pa.R.Crim.P. 720(B)(3). This timely appeal followed on November 24, 2015. On January 22, 2016, the trial court entered an order directing appellant to file a Pa.R.A.P. 1925(b) statement by February 22, 2016. Appellant complied with the trial court's order and filed a timely Rule 1925(b) statement on February 22, 2016. Thereafter, on April 20, 2016, the PCRA court filed a comprehensive, ten-page Rule 1925(a) opinion.

Appellant raises the following issue for our review:

> Did the [trial] court impose a manifestly excessive and unreasonable sentence in violation of the Sentencing Code when it sentenced [a]ppellant to an aggregate sentence of 20 to 40 years in state prison followed by 20 years of probation, because it violated the requirements of section 42 Pa.C.S.[A.] § 9721, it failed to provide a contemporaneous statement for deviating from the guidelines on the record and failed to consider [a]ppellant's needs and whether the sentence was the least stringent to protect the community[?]

---

[2] Appellant was represented at sentencing by Jeffrey Kilroy, Esq. ("Attorney Kilroy").

Appellant's brief at 3 (footnote omitted).[3]

Our standard of review in assessing whether a trial court has erred in fashioning a sentence is well settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, [a]ppellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014), *appeal denied*, 117 A.3d 297 (Pa. 2015) (citation omitted).

Where an appellant challenges the discretionary aspects of his sentence, as is the case here, the right to appellate review is not absolute. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Rather, an appellant challenging the discretionary aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether appellant preserved his issue; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a

---

[3] The record reflects that appellant has abandoned the remaining claims raised in his Rule 1925(b) statement.

> substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Carrillo-Diaz***, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Here, the record reveals that appellant filed a timely notice of appeal and challenged the discretionary aspects of his sentence in his July 16, 2015 post-sentence motion. Appellant also included a statement in his brief that comports with the requirements of Pa.R.A.P. 2119(f). (***See*** appellant's brief at 11-14.) Accordingly, we must determine whether appellant has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa.Super. 2013), ***appeal denied***, 76 A.3d 538 (Pa. 2013) (citation omitted). "A substantial question exists only when appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Glass***, 50 A.3d 720, 727 (Pa.Super. 2012), ***appeal denied***, 63 A.3d 774 (Pa. 2013) (citation omitted).

In his Rule 2119(f) statement, appellant argues that his sentence is manifestly excessive, clearly unreasonable, and is the functional equivalent of a life sentence. (Appellant's brief at 11, 14.) Appellant contends that the trial court failed to state sufficient reasons on the record for deviating from

the sentencing guidelines with respect to the burglary and criminal conspiracy charges and "failed to specifically delineate what factors it considered aggravators, thus justifying its sentence[.]" (*Id.* at 12, 17-20.) Appellant further argues that the trial court failed to consider multiple sentencing factors set forth in Section 9721(b), including "an individualized consideration as to appellant's rehabilitative needs[,]" his character, and his difficult upbringing. (*Id.* at 13, 20-25.) Rather, appellant avers the trial court elected to "focus[] solely on the facts relating to the instant case and his criminal record." (*Id.* at 13.)[4]

We have recognized that "a claim that the sentencing court misapplied the Sentencing Guidelines presents a substantial question." ***Commonwealth v. Cook***, 941 A.2d 7, 11 (Pa.Super. 2007) (citation

---

[4] Appellant also argues, albeit parenthetically, that the trial court abused its discretion in imposing his sentences consecutively. (Appellant's brief at 11, 16.) The "[l]ong standing precedent of this [c]ourt recognizes that 42 Pa.C.S.A. [§] 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Marts***, 889 A.2d 608, 612 (Pa.Super. 2005). Generally, the imposition of consecutive sentences does not raise a substantial question. ***See Commonwealth v. Pass***, 914 A.2d 442, 446 (Pa.Super. 2006). Such a claim may raise a substantial question "in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa.Super. 2013), ***appeal denied***, 91 A.3d 161 (Pa. 2014) (citation omitted). This case simply does not present "extreme circumstances" and appellant's sentence is not unduly harsh considering the criminal conduct that occurred in the case, the nature of the crime, and the length of imprisonment. Accordingly, we conclude that the trial court's decision to impose consecutive, rather than concurrent, sentences does not present a substantial question for our review.

omitted). Appellant's assertion that the sentencing court failed to consider his individualized circumstances in fashioning his sentence also raises a substantial question. *See Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa.Super. 2008). Additionally, a claim that the trial court failed to consider an appellant's rehabilitative needs raises a substantial question. *See Dodge*, 77 A.3d at 1273 (finding "appellant's claim that the sentencing court disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence presents a substantial question for our review."). Accordingly, we proceed to consider the merits of appellant's discretionary sentencing claims.

Herein, the record reveals that the trial court considered and weighed numerous factors in fashioning appellant's sentence, including the sentencing guidelines, the protection of the public, appellant's lack of remorse, and the "unmitigated cruelty and indifference to the value of human life demonstrated by [a]ppellant." (Notes of testimony, 7/10/15 at 4; *see also* trial court opinion, 4/20/16 at 5-8.) The record further reflects that the trial court took into consideration the gravity of the offense in relation to its impact on the victim, who testified briefly at the July 10, 2015 hearing and authored an impact letter that was read into the record by Assistant District Attorney Alisa Shver. (Notes of testimony, 7/10/15 at

27-29, 38.)[5]    The trial court also heard extensive testimony from Attorney Kilroy on appellant's background, minimal education, and substance abuse problems.    (*Id.* at 4-11.)    Appellant's mother, Pauline Casiano[6], also testified as to appellant's family life and upbringing, stating that "[a]fter [appellant's] father died, he got really caught up in lot [sic] of things[,]" and that she had "never seen a mean side of him like that."  (*Id.* at 21.)

Additionally, the trial court was aware of the fact that appellant has 10 arrests and 8 convictions as an adult, but concluded that appellant's prior terms of imprisonment had done little to deter him from criminal behavior. (Trial court opinion, 4/20/16 at 7-8; *see also* notes of testimony, 7/10/15

---

[5] The trial court summarized the contents of the victim impact letter as follows:

> In the letter Mr. Phillips wrote how he has only been able to see darkness since the incident.  Mr. Phillips remains frightened because [a]ppellant yelled in his ear, "Don't you forget who did this," as [a]ppellant and Masten held him down, assaulted him, and ultimately gouged his eyes out, thinking they left him for dead.  Mr. Phillips fears that if [a]ppellant were ever let out of prison that he would be free to come after him and finish the job he set out to do that night when he blinded him.

Trial court opinion, 4/20/16 at 4-5 (citations to notes of testimony omitted).

[6] Appellant's mother's name is incorrectly spelled Pauline **Cassiano** in the July 10, 2015 hearing testimony.  (*See* notes of testimony, 7/10/15 at 21-23.)

at 39.)  At the July 10, 2015 hearing, the trial court stated the following

rationale in support of appellant's 20 to 40-year term of imprisonment:

> Well, I have heard everything.  I have read everything.  And this is one of the more heinous things that I have seen as a criminal judge the entire time I've been on the bench.  The cruelty that's been displayed here, is something else.
>
> Your attorney started off by telling me that you've been sentenced several times and that you've never really got into a treatment plan, but it reminded me of something else.  A quote from Shakespeare on mercy.  Up until now the [trial c]ourt has shown you nothing by mer[cy].  Well, that is about to change.  I know that you may have been a follower.  But you got to remember that sometimes the person you would take the bullet for is the person standing behind the trigger and that's the case here.
>
> What happened to [the victim], and in the way it was done, was more callous than anything I've ever seen, but for the grace of God he is alive.  And there's [sic] to no fault of yours that that has occurred.  At the time that this had occurred, it was a fight over a girl.  And I would agree to an extent that the white supremacy had nothing to do with it.  It's a lifestyle choice that I do not agree with.  But it was a fight over a girl and you went to beat a man up.  You go into his house, and as you described it later, you had a boot party.  You sat on his chest while someone dug their thumbs into this man's eyes and pulled them out and squished them.  You told a friend that you got him and that you killed him real good [sic] and you were having a boot party.
>
> Now, everyone is telling me that you're remorseful, but true remorse is not a fear of consequence.  True remorse is a regret over the cause of actions that lead to this and that's not what I'm seeing.

. . . .

> I can tell you right now that had this gone to trial and you had been found guilty of these charges, and had you been in front of me, I can guarantee that you would never have been eligible for parole in your nature [sic] lifetime. As harsh as you may think this sentence is, it is not.

Notes of testimony, 7/10/15 at 39-41.

Additionally, both appellant and Attorney Kilroy testified at the sentencing hearing with regard to the number of rehabilitative and recovery programs appellant has enrolled in while incarcerated and his desire to change his life and undergo treatment. (*Id.* at 12-19, 35-37.) Although the record reflects that the trial court did not specifically state at the sentencing hearing that it considered appellant's rehabilitative needs, the trial court was in possession of both a lengthy PSI report prepared by appellant's counsel and a court-appointed mental health evaluation and indicated that it considered both of them. (Notes of testimony, 7/10/15 at 3; *see also* "Motion to Reconsider Sentence," 7/16/15, Appendix A; certified record at 13.) Where the trial court has the benefit of a PSI report, as is the case here, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa.Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (citation omitted).

Accordingly, for all the foregoing reasons, we find that appellant's challenges to the discretionary aspects of his sentence must fail. Therefore, we affirm the November 5, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2017