J-S24030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PATRICK SCOTT MONGEAU | |
| Appellant | No. 134 EDA 2020 |

Appeal from the PCRA Order Entered December 19, 2019
In the Court of Common Pleas of Bucks County
Criminal Division at No.: CP-09-CR-0006068-2014

BEFORE: BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.: **FILED AUGUST 11, 2020**

Appellant Patrick Scott Mongeau appeals from the December 19, 2019 order of the Court of Common Pleas of Bucks County ("PCRA court"), which denied his petition under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-46. Upon review, we affirm.

The facts and procedural history of this case are undisputed. As recounted by a prior panel of this Court on direct appeal:

> Kimberly Harvie-Kelly [(the "victim")], age 51 at the time of trial, resided in a single-family residence located at 85 Quaker Hill Road, in Middletown Township, Bucks County, with her four children, ages 17, 16, 13 and 9. [The victim] knew [Appellant] from middle school. In July 2012, [Appellant] contacted her through Facebook. One month later, [Appellant] called her from a bus depot in Philadelphia and told her that he did not have transportation and that he had nowhere to stay. [The victim] drove to Philadelphia, brought him back to her home and allowed

---

[*] Retired Senior Judge assigned to the Superior Court.

him to reside there. Subsequently, the two began a romantic relationship. The criminal offenses for which [Appellant] was tried and convicted began to occur when [the victim] terminated that relationship.

This case involves three distinct criminal episodes. The first criminal episode spanned a period of approximately eight months and formed the basis for the [Appellant's] stalking conviction. Between September of 2013 and June of 2014, [Appellant] engaged in a continuous course of conduct designed to place [the victim] in fear of bodily injury and/or to cause her substantial emotional distress. [Appellant] randomly and repeatedly appeared at the [victim's] residence uninvited and unannounced despite being told by [her], her oldest sons and police to stay away from their home and to refrain from contacting them. On one such occasion, [Appellant] climbed on to the roof of the home. On another, he circled the home knocking on all of the windows. When not appearing in person, [Appellant] attempted to communicate with [the victim] through e-mail, text messaging and Facebook. He subjected [the victim] to physical assaults, causing her to suffer nerve damage during one of those assaults. Finally, he threatened to take her life.

On January 28, 2014, [Appellant] left [the victim] a voicemail message in which he told her, "You are dead. No one can stop me now. Goodbye you whore." When he was contacted by the police about this death threat, [Appellant] admitted that he had made comments that he "probably shouldn't have." [Appellant's] intrusions into the lives of this family caused such fear and occurred so often that the family initiated what they called the "lockdown procedure" at the first sign of [Appellant's] potential presence. When the family was in "lockdown," the windows and doors of the residence were locked, no one was allowed in or out and everyone in the home kept a cellphone within reach.

[The victim] soon realized that her attempts to keep [Appellant] away from her and her children had failed. She also realized that police intervention was having a negative impact on [Appellant's] behavior. She testified that [Appellant] began to believe "he was untouchable" because, when the police were called to [the victim's] home, he was simply escorted off the property. She was, therefore, forced to change tactics. Rather than trying to terminate the unwanted contact, she tried to minimize [Appellant's] aggressive behavior by "keeping him calm." That

- 2 -

tactic also failed to curb [Appellant's] violent, aggressive and controlling behavior.

The second criminal episode occurred on June 1, 2014 at Penn Warner Park, a lakeside campground located in Falls Township, Bucks County, and formed the basis for [Appellant's] simple assault and harassment convictions. On that date, [Appellant] arrived at [the victim's] residence shortly after midnight looking for [the victim]. Her oldest son, M.C., told [Appellant] that [the victim] was not home but did not disclose that she and her boyfriend, Joseph Loomis, were staying at Penn Warner Park. M.C. heard [Appellant] comment, "She is probably at the lake with her new boyfriend." M.C. immediately called [the victim] and her boyfriend to warn them [Appellant] might be on his way. He also initiated "lockdown mode." M.C. stood watch until 3:00 a.m. to make sure [Appellant] did not return.

At approximately 1:00 a.m., [Appellant] arrived at Penn Warner Park, located the trailer where [the victim] and Mr. Loomis were staying and began banging on their door and yelling. [The victim] went outside to try to calm him down. As she was trying to speak with him, [Appellant] grabbed her, forcibly kissed her on the mouth and told her, "You have a week to fix this or we are dead." [The victim] asked [Appellant] why she had to die. He responded, "Because we are soul mates." [Appellant] then grabbed [the victim], one hand on the back of her neck, one hand on her chin, and twisted her head and neck. To avoid suffering serious injury, she did not resist the force being applied to her head and, as a result, was "flipped" to the ground. [The victim] testified that [Appellant] "goes for my neck like he is going to snap my neck. That's how he is going to . . . kill me." Mr. Loomis heard [the victim] cry out and ran to assist her. [Appellant] then fled the area. [The victim] sustained painful scratches and bruises to her arms and back during this incident.

The third criminal episode occurred that same date at [the victim's] residence and led to [Appellant's] arson, reckless burning and criminal mischief convictions. Between 3:00 a.m. and 7:00 am., [Appellant] returned to [the victim's] residence. He entered the shed on the property, retrieved a gas can and poured a trail of gasoline in the back yard, over a motorcycle parked beside the home and along the back wall of the residence. He ignited the gasoline with a match. The fire, while burning, blocked anyone from exiting the home through the sliding glass doors located at

the back of the residence. M.C., M.G., E.K. and W.K. were asleep in the house when [Appellant] started the fire.

***Commonwealth v. Mongeau***, No. 3513 EDA 2015, unpublished memorandum, at 1 (Pa. Super. filed October 19, 2016) (citing Trial Court Opinion, 4/8/16, at 2-5) (record citations, unnecessary capitalizations and footnotes omitted). Following the jury trial, Appellant was convicted of arson endangering inhabited property, reckless burning endangering personal property, criminal mischief, stalking, simple assault, harassment, and four counts of recklessly endangering another person ("REAP").[1] On April 20, 2015, the trial court sentenced him to consecutive terms of five to ten years' imprisonment for arson, three-and-a-half to seven years for reckless burning, two-and-a-half to five years for stalking, one to two years for simple assault, and one to two years each REAP conviction. The court imposed upon Appellant an aggregate term of sixteen to thirty-two years' imprisonment. Following the filing of post-sentence motions, which the trial court denied, Appellant filed a direct appeal. As noted, a panel of this Court affirmed Appellant's judgment of sentence on October 19, 2016. Our Supreme Court denied Appellant's petition for allowance of appeal on April 11, 2017. ***See*** ***Commonwealth v. Mongeau***, 168 A.3d 1251 (Pa. 2017).

On August 7, 2017, Appellant *pro se* filed a PCRA petition, alleging, among other things, ineffective assistance of counsel claims. The PCRA court

---

[1] 18 Pa.C.S.A. §§ 3301(c)(2), 3301(d)(2), 3304(a)(1), 2709.1(a)(1), 2701(a)(1), 2709(a)(1) and 2705, respectively.

appointed counsel, who filed an amended petition. Following a hearing, the PCRA court denied Appellant relief on December 19, 2019. Appellant timely appealed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal,[2] Appellant raises a single issue for our review.

[I.] Did [Appellant] receive ineffective assistance of counsel when counsel on direct appeal failed to preserve and argue against the overruling of her objection to inadmissible hearsay?

Appellant Brief at 3.

At the core, Appellant argues that, although his counsel timely lodged a hearsay objection at trial,[3] she failed to pursue on direct appeal the overruling of that objection.[4] *Id.* at 14. As a result, she rendered ineffective assistance on direct appeal.

_____

[2] "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014) (quoting *Commonwealth v. Rainey*, 928 A.2d 215, 223 (Pa. 2007)).

[3] Appellant does not identify the offending statements in his brief before us. We, however, are able to discern from the Commonwealth's brief and the trial court's Rule 1925(a) opinion that Appellant challenges his direct appeal counsel's failure to pursue on appeal **two distinct** trial objections. The first concerns the admission of Officer Thomas Lundquist's testimony relating to the victim's statements. The second relates to the recording of Mr. Loomis' 911 call that was played for the jury.

[4] Our standard of review regarding evidentiary issues is well-settled.

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is

When a petitioner asserts an ineffectiveness claim, he is entitled to relief if he pleads and proves that prior counsel rendered ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(ii). "To prevail on an [ineffectiveness] claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice." *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*). "A petitioner must prove all three factors of the "*Pierce*[5] test," or the claim fails." *Id.* Put differently, "[t]he burden of proving ineffectiveness rests with Appellant." *Commonwealth v. Chmiel*, 889 A.2d 501, 540 (Pa. 2005).

Instantly, Appellant is not entitled to relief. Despite his argument that his ineffectiveness claims meet the arguable merit prong of the *Pierce* test, his brief is bereft of any discussion or argument with respect to the reasonable basis and prejudice prongs. As we recently emphasized, "[a] petitioner must prove all three factors of the *Pierce* test, or the [ineffectiveness] claim fails. In addition, on appeal, a petitioner ***must adequately discuss all three***

---

manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Glass*, 50 A.3d 720, 724-25 (Pa. Super. 2012) (internal quotations and citations omitted).

[5] *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).

- 6 -

***factors*** of the ***Pierce*** test, or the appellate court will reject the claim."

***Reyes-Rodriguez***, 111 A.3d at 780 (emphasis added) (citing ***Fears***, 86 A.3d

at 804)).  Thus, given Appellant's failure to discuss the reasonable basis and

prejudice prongs on appeal, we must reject his ineffectiveness claims.

Nonetheless, even if we were to review the merits of his ineffectiveness

claim, we would conclude that he still is not entitled to relief.  Indeed, after

careful review of the record and the relevant case law, we conclude that the

trial court accurately and thoroughly addressed the merits of Appellant's

claim.  ***See*** Trial Court Opinion, 2/24/20, at 5-13.  The PCRA court found that

the statements at issue did not implicate hearsay.  The testimony of Officer

Lundquist, was not offered for the truth of the matter asserted, "but rather to

establish the consistency between the victim's account and her physical

condition and to explain the steps Officer Lindquist took to investigate the

complaint."  ***Id.*** at 7.  In other words, the purpose of the testimony was to

explain Officer Lundquist's course of conduct in response to the reported

assault on the victim.[6]  ***Id.***  Furthermore, regardless of whether the recording

of the Mr. Loomis' 911 call was properly admitted under the present sense

impression and/or excited utterance exceptions to the hearsay rule, any error

was harmless, as the call was cumulative of other non-hearsay testimony.  ***Id.***

---

[6] "It is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which the police acted."  ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1037 (Pa. Super. 2014) (citing ***Commonwealth v. Weiss***, 81 A.3d 767, 806 (Pa. 2013) (quoting ***Commonwealth v. Chmiel***, 889 A.2d 501, 532 (Pa. 2005)).

at 9-11. We, therefore, agree with the PCRA court's conclusion that Appellant's ineffectiveness claim lacks arguable merit. Accordingly, we affirm the trial court's December 19, 2019 order denying Appellant's PCRA petition. We further direct that a copy of the trial court's February 24, 2020 opinion be attached to any future filings in this case.

Order affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    No.    **CP-09-CR-0006068-2014**

v.                :    **[134 EDA 2020]**

PATRICK SCOTT MONGEAU      :

### <u>OPINION</u>

Petitioner, Patrick Scott Mongeau, filed an appeal from this Court's order dated December 19, 2019, denying Petitioner's request for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §9541 *et seq.*

On February 6, 2015, following a trial by jury, Petitioner was convicted of Arson (endangering inhabited property), specifically the residence of Kimberly Harvie-Kelly and her four children, M.C.,[1] M.G., E.K. and W.K., in violation of 18 Pa.C.S. §3301(c)(2), Reckless Burning (endangering personal property), specifically a motorcycle owned by Ms. Harvie-Kelly, in violation of 18 Pa.C.S. §3301(d)(2), Criminal Mischief, in violation of 18 Pa.C.S. §3304(a)(1), Stalking of Ms. Harvie-Kelly in violation of 18 Pa.C.S. §2709.1(a)(1), Simple Assault of Ms. Harvie-Kelly in violation of 18 Pa.C.S. §2701(a)(1), Harassment of Ms. Harvie-Kelly in violation of 18 Pa.C.S. §2709(a)(1), Recklessly Endangering M.C., Recklessly Endangering M.G., Recklessly Endangering E.K. and Recklessly Endangering W.K in violation of 18 Pa.C.S. §2705. On April 20, 2015, Petitioner was sentenced to consecutive terms of incarceration of five to ten years for the crime of Arson, three-and-a-half to seven years for the crime of Reckless Burning,

---

[1] Ms. Harvie-Kelly is the guardian of M.C. N.T. 2/4/15, at 28-29.

two-and-a-half to five years for the crime of Stalking,[2] one to two years for the crime of Simple Assault, and one to two years for each of the crimes of Recklessly Endangering Another Person for an aggregate sentence of sixteen to thirty-two years.

The facts of the case were summarized in this Court's opinion for direct appeal as follows:

> Kimberly Harvie-Kelly, age 51 at the time of trial, resided in a [single-family] residence located at 85 Quaker Hill Road, in Middletown Township, Bucks County, with her four children, ages 17, 16, 13 and 9. [N.T. 2/5/15 pp. 36-37.] Ms. Harvie-Kelly knew [Petitioner] from middle school. In July of 2012, [Petitioner] contacted her through Facebook. One month later, [Petitioner] called her from a bus depot in Philadelphia and told her that he did not have transportation and that he had nowhere to stay. Ms. Harvie-Kelly drove to Philadelphia, brought him back to her home and allowed him to reside there. Subsequently, the two began a romantic relationship. The criminal offenses for which [Petitioner] was tried and convicted began to occur when Ms. Harvie-Kelly terminated that relationship. [N.T. 2/5/15 pp. 39-45.]
>
> This case involves three distinct criminal episodes. The first criminal episode spanned a period of approximately eight months and formed the basis for [Petitioner]'s Stalking conviction. Between September of 2013 and June of 2014, [Petitioner] engaged in a continuous course of conduct designed to place Ms. Harvie-Kelly in fear of bodily injury and/or to cause her substantial emotional distress. [Petitioner] randomly and repeatedly appeared at the Harvie-Kelly residence uninvited and unannounced despite being told by Ms. Harvie-Kelly, her oldest sons and police to stay away from their home and to refrain from contacting them. [N.T. 2/4/15 pp. 22-25, 32-33; N.T. 2/5/15 p. 46, 50-53.] On one such occasion, [Petitioner] climbed on to the roof of the home. [N.T. 2/5/15 p. 53.] On another, he circled the home knocking on all of the windows. [N.T. 2/5/15 p. 52.] When not appearing in person, [Petitioner] attempted to communicate with Ms. Harvie-Kelly through e-mail, text messaging and Facebook. [N.T. 2/5/15 pp. 46, 48-49.] He subjected Ms. Harvie-Kelly to physical assaults, causing her to suffer nerve damage during one of those assaults. [N.T. 2/5/15 p. 68.] Finally, he threatened to take her life. On January 28, 2014,

---

[2] The court sheet for April 20, 2015 originally reflected a maximum sentence of seven years on the stalking conviction. By order dated June 12, 2019, the record and the court sheet were corrected to reflect that the maximum sentence imposed was five years.

2

[Petitioner] left Ms. Harvie-Kelly a voicemail message in which he told her, "You are dead. No one can stop me now. Goodbye you whore." [N.T. 2/5/15 p. 50; Exhibit C-5.] When he was contacted by the police about this death threat, [Petitioner] admitted that he had made comments that he "probably shouldn't have." [N.T. 2/4/15 pp. 23-24.] [Petitioner]'s intrusions into the lives of this family caused such fear and occurred so often that the family initiated what they called the "lockdown procedure" at the first sign of [Petitioner]'s potential presence. When the family was in "lockdown," the windows and doors of the residence were locked, no one was allowed in or out and everyone in the home kept a cellphone within reach. [N.T. 2/4/15 pp. 35-36; N.T. 2/5/15 p. 52.]

Ms. Harvie-Kelly soon realized that her attempts to keep [Petitioner] away from her and her children had failed. She also realized that police intervention was having a negative impact on [Petitioner]'s behavior. She testified that [Petitioner] began to believe "he was untouchable" because, when the police were called to Ms. Harvie-Kelly's home, he was simply escorted off the property. [N.T. 2/5/15 p. 54.] She was, therefore, forced to change tactics. Rather than trying to terminate the unwanted contact, she tried to minimize [Petitioner]'s aggressive behavior by "keeping him calm." [N.T. 2/5/15 pp. 54-56.] That tactic also failed to curb [Petitioner]'s violent, aggressive and controlling behavior.

The second criminal episode occurred on June 1, 2014 at Penn Warner Park, a lakeside campground located in Falls Township, Bucks County, and formed the basis for [Petitioner]'s Simple Assault and Harassment convictions. On that date, [Petitioner] arrived at the Harvie-Kelly residence shortly after midnight looking for Ms. Harvie-Kelly. Her oldest son, M.C., told [Petitioner] that Ms. Harvie-Kelly was not home but did not disclose that she and her boyfriend, Joseph Loomis, were staying at Penn Warner Park. M.C. heard [Petitioner] comment, "She is probably at the lake with her new boyfriend." M.C. immediately called Ms. Harvie-Kelly and her boyfriend to warn them [Petitioner] might be on his way. He also initiated "lockdown mode." M.C. stood watch until 3:00 a.m. to make sure [Petitioner] did not return. [N.T. 2/4/15 pp. 28-40.]

At approximately 1:00 a.m., [Petitioner] arrived at Penn Warner Park, located the trailer where Ms. Harvie-Kelly and Mr. Loomis were staying and began banging on their door and yelling. [N.T. 2/4/15 pp. 108-111; N.T. 2/5/15 pp. 60-63.] Ms. Harvie-Kelly went outside to try to calm him down. As she was trying to speak with him, [Petitioner] grabbed her, forcibly kissed her on the mouth and told her, "You have a week to fix this or we are dead." Ms.

Harvie-Kelly asked [Petitioner] why she had to die. He responded, "Because we are soul mates." [Petitioner] then grabbed Ms. Harvie-Kelly, one hand on the back of her neck, one hand on her chin, and twisted her head and neck. To avoid suffering serious injury, she did not resist the force being applied to her head and, as a result, was "flipped" to the ground. [N.T. 2/5/15 pp. 64-68.] Ms. Harvie-Kelly testified that [Petitioner] "goes for my neck like he is going to snap my neck. That's how he is going to ... kill me." Mr. Loomis heard Ms. Harvie-Kelly cry out and ran to assist her. [Petitioner] then fled the area. [N.T. 2/4/15 p. 111; N.T. 2/5/15 p. 69.] Ms. Harvie-Kelly sustained painful scratches and bruises to her arms and back during this incident. [N.T. 2/4/15 p. 56, Exhibit C-1; N.T. 2/5/15 p. 69.]

The third criminal episode occurred that same date at the Harvie-Kelly residence and led to [Petitioner]'s Arson, Reckless Burning and Criminal Mischief convictions. Between 3:00 a.m. and 7:00 a.m., [Petitioner] returned to the Harvie-Kelly residence. He entered the shed on the property, retrieved a gas can and poured a trail of gasoline in the back yard, over a motorcycle parked beside the home and along the back wall of the residence. He ignited the gasoline with a match. [Two burnt paper matches were found at the point of ignition. N.T. 2/5/15 pp. 109-111; Exhibit C-4.] The fire, while burning, blocked anyone from exiting the home through the sliding glass doors located at the back of the residence. [N.T. 2/5/15 pp. 95-116.] M.C., M.G., E.K. and W.K. were asleep in the house when [Petitioner] started the fire. [N.T. 2/5/15 pp. 36-37.]

Direct Appeal Opinion, 4/8/16, at 2-5 (footnotes incorporated).

On April 30, 2015, Petitioner filed post-sentence motions challenging the sufficiency of the evidence and requesting reconsideration of sentence. Following a hearing held on July 14, 2015, Petitioner's motion for reconsideration was denied. On October 26, 2015, Petitioner's motion challenging the sufficiency of the evidence was denied. On November 23, 2015, Petitioner filed Notice of Appeal. On November 30, 2015, Petitioner was directed to file a concise statement of matters complained of on appeal (Statement). On December 11, 2015, Petitioner filed his Statement. On April 8, 2016, this Court filed an opinion pursuant to Pa.R.A.P. 1925(a). In a Memorandum Opinion filed October 19, 2016, judgment of sentence was affirmed by the Superior

Court. On November 17, 2016, Petitioner filed a Petition for Allowance of Appeal in the Supreme Court. On April 11, 2017, the Supreme Court denied the Petition for Allowance of Appeal.

On August 7, 2017, the Petitioner filed a *pro se* PCRA petition. On September 12, 2017, PCRA counsel was appointed and was directed to file an amended PCRA petition. On January 23, 2018, PCRA counsel filed an amended petition raising two claims of ineffective assistance of trial counsel. On March 9, 2018, the Commonwealth filed an answer. On April 25, 2018, this Court issued an order directing Petitioner to clarify his amended petition. On May 25, 2018, PCRA counsel filed, in writing, the court-ordered clarifications.

On June 12, 2019, this Court held a PCRA hearing. By order dated December 19, 2019 this Court denied Petitioner's request for PCRA relief. On December 20, 2019, Petitioner filed Notice of Appeal. On January 2, 2020, Petitioner was directed to file a concise statement of matters complained of on appeal. On January 21, 2020, Petitioner filed a timely Statement.

To obtain PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated grounds for relief set forth in 42 Pa.C.S. §9543(a)(2); that his claims were not previously litigated or waived, 42 Pa.C.S. §9543(a)(3); and that the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel, 42 Pa.C.S. 9543(a)(4). Commonwealth v. Reid, 627 Pa. 151, 169, 99 A.3d 470, 481 (2014). In the instant case, Petitioner relies on 42 Pa.C.S. §9543(a)(2)(ii), ineffective assistance of counsel, as his sole basis for relief. Petitioner alleges that he is entitled to PCRA relief on the grounds that trial counsel was ineffective for "waiving the issue of improper hearsay testimony of Thomas Lundquist and 911 calls of Joseph Loomis in [Petitioner's] direct appeal to the Superior Court." Statement, ¶ 1.

The standards applicable to claims of ineffective assistance of counsel are well established. Counsel's performance is presumed to be constitutionally adequate. Commonwealth v. Smith, 609 Pa. 605, 623, 17 A.3d 873, 883 (2011). To be eligible for relief based on ineffective assistance of trial counsel, Petitioner must establish the following:

> (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Pierce, 567 Pa. 186, 786 A.2d 203, 213 (2001).

Commonwealth v. Spotz, 587 Pa. 1, 32-33, 896 A.2d 1191, 1209-10 (2006). Trial counsel will not be deemed ineffective for failing to raise a meritless claim. Commonwealth v. Keaton, 623 Pa. 229, 240, 82 A.3d 419, 426 (2013). Moreover, defense counsel is afforded broad discretion to determine tactics and strategy. Commonwealth v. Fowler, 670 A.2d 153 (Pa.Super.1996). Where a petitioner has failed to meet any of the three distinct prongs of the ineffective assistance of counsel test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met. Commonwealth v. Basemore, 560 Pa. 258, 294, 744 A.2d 717, 738 n.23 (2000).

Petitioner asserts that trial counsel was ineffective for failing to challenge two hearsay rulings on appeal. The first ruling occurred during the testimony of Officer Thomas Lundquist of the Falls Township Police Department. Officer Lundquist testified that he responded to the Penn Warner Club for the report of a domestic in progress and spoke to the victim and Mr. Loomis. N.T. 2/4/15, at 53-54. He was then asked what he learned from the victim. N.T. 2/4/15, at 54. Trial counsel objected to the testimony as hearsay. Trial counsel's objections were overruled. N.T. 2/4/15, at 54-55. Officer Lundquist thereafter summarized the victim's account as follows:

> She was previously involved in a relationship with [Petitioner] Mr.
> Mongeau and ... she had broken off the relationship with him; that

6

tonight she was down there with Mr. Loomis at her campsite, and that Mr. Mongeau showed up there unannounced.

Q. Did she indicate to you what happened when he showed up there?

A. He was banging on the door arguing, trying to talk to her.

***

A. ... That Mr. Mongeau showed up, was banging on the door. Trying to diffuse the situation she said she went out to talk to him to try to avoid a conflict between Mr. Loomis and Mr. Mongeau. So she walked out, walked him out toward the street away from the trailer, and that they continued to argue. She advised that the relationship was over. She wanted no further relationship with him. This upset Mr. Mongeau, basically saying she had a week to wise up or he was going to kill both of them. Somewhere along the course of that he grabbed her by the neck and threw her to the ground.

N.T. 2/4/15, at 54-56. Officer Lundquist then proceeded to testify that he observed dirt on the victim's clothes and injuries to her person that were consistent with the victim's account. N.T. 2/4/15, at 56-59; Exhibits C-1A-C. That testimony was followed by testimony regarding the actions he took in response to the report, which included his unsuccessful attempt to locate Petitioner. N.T. 2/4/15, at 58-62.

Hearsay is defined as a statement that (1) the declarant does not make while testifying at the current trial or hearing and (2) a party offers in evidence to provide the truth of the matter asserted in the statement. Pa.R.E. 801(c). The admission of a hearsay statement is prohibited unless it falls under an exception provided by the rules. Pa.R.E. 802.

In the instant case, Officer Lundquist's testimony regarding the victim's statement was not hearsay since it was offered to prove the truth of the matter asserted but rather to establish the consistency between the victim's account and her physical condition and to explain the steps Officer Lundquist took to investigate the complaint. Pa.R.E. 801(c)(2). Moreover, "[i]t is well

established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted." Commonwealth v. Weiss, 6 22 Pa. 663, 728, 81 A.3d 767, 806 (2013) (quoting Commonwealth v. Chmiel, 585 Pa. 547, 889 A.2d 501, 532 (2005); Commonwealth v. Johnson, 615 Pa. 354, 386, 42 A.3d 1017, 1035 (2012) ("[A]ny out-of-court statement offered not for its truth but to explain the witness's course of conduct is not hearsay."). Since the recording did not constitute inadmissible hearsay, trial counsel may not be deemed to have been ineffective for failing to challenge the testimony on appeal. Counsel may not be deemed to be ineffective for failing to raise a meritless claim. Commonwealth v. Keaton, supra.

Petitioner also asserts that this Court erred in admitting Mr. Loomis' 911 calls over trial counsel's objection and, therefore, trial counsel was ineffective in failing to challenge that ruling on appeal. This claim also lacks merit. The first 911 call in question was placed by Mr. Loomis immediately after Petitioner's assault of Mr. Loomis' girlfriend at Penn Warner Park. N.T. 2/4/15, at 53, 106; N.T. 2/5/15, at 69. During the 911 call Mr. Loomis stated that his girlfriend's "ex-friend just came up here," that she went "out on the porch to talk to him," and that "he assaulted her." Mr. Loomis stated that his girlfriend told him that Petitioner "tried to snap her neck."[3] He stated that Petitioner disappeared when Mr. Loomis went outside. Finally, he stated that there were "issues with him before" that would be on file with Middletown Township Police. Exhibit C-8 (recording one).

The 911 recording contains double hearsay. Double hearsay is "[a]n out-of-court declaration [that] contain[s] another out-of-court declaration." Commonwealth v. Laich, 566 Pa. 19, 777 A.2d 1057, 1060 (2001). Double hearsay is admissible when each statement within an

---

[3] The rest of Mr. Loomis' statement related to his location, directions to the location, Petitioner's name and physical description and that a weapon was not observed.

out-of-court declaration falls under an exception to the hearsay rule. Id. In the instant case, the victim's statements to Mr. Loomis and Mr. Loomis' statements to the 911 operator are admissible under two exceptions to rule against hearsay, the present sense impression exception, Pa.R.E. 803(1), and the excited utterance exception. Pa.R.E. 803(2).

The present sense impression exception applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa.R.E. 803(1). The rationale for the present sense impression exception is that the "[r]elative immediacy of the declaration insures that there will have been little opportunity for reflection or calculated misstatement." Commonwealth v. Coleman, 458 Pa. 112, 117, 326 A.2d 387, 389 (1974). A call to 911 may qualify as a present sense impression if the statement is reported contemporaneously with the event or is so instantaneous "that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." Commonwealth v. Cunningham, 805 A.2d 566, 573 (Pa.Super.2002). The excited utterance exception applies to "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). "The spontaneity of such an excited declaration is the source of reliability and the touchstone of admissibility." Commonwealth v. Coleman, 458 Pa. at 116, 326 A.2d at 389.

In the instant case, the evidence established that the victim told Mr. Loomis about the assault immediately after the assault occurred. Mr. Loomis testified that, during the early morning hours of June 1st, he and the victim were forced out of bed by Petitioner, who was banging on their camper door and hollering for the victim. N.T. 2/4/15, at 109. He testified that he followed the victim and Petitioner outside and that when he heard the victim "squeal," he ran in that direction and saw the victim on the ground and Petitioner walking away. Mr. Loomis immediately

approached Petitioner and told him to leave. Once Petitioner was approximately fifty feet away, Mr. Loomis went over to the victim, who told him that Petitioner had attacked her. N.T. 2/4/15, at 110-112. Mr. Loomis returned to the camper and called 911. N.T. 2/4/15, at 111; 2/5/15, at 69.

The victim's statements to Mr. Loomis were made immediately after she was threatened and assaulted. Her statements therefore constitute present sense impressions and excited utterances. Mr. Loomis' statements to the 911 operator were made shortly thereafter. Since he was present when the confrontation began and also witnessed the immediate aftermath, his statements also constitute present sense impressions and excited utterances. Because all of the statements fall under an exception to the hearsay rule, the recording of the 911 call was properly admitted and trial counsel may not be deemed to have been ineffective for failing to challenge the admission of the 911 call on appeal. Counsel may not be deemed to be ineffective for failing to raise a meritless claim. Commonwealth v. Keaton, supra.

The second 911 call in question was placed by Mr. Loomis after he and the victim returned to the victim's home at 7 a.m. on the same morning as the assault and found that a fire, which was still smoldering, had been set at the home. N.T. 2/4/15, at 122-123. Mr. Loomis testified that when he saw the damage to the home and the surrounding area, he immediately called the police. N.T. 2/4/15, at 133. During that call, Mr. Loomis reported that a fire had been set at the residence and that Petitioner was the individual who had set the fire. Exhibit C-8. When the recording was published to the jury, this Court immediately instructed the jury that the recording was being admitted to establish that the fire had been immediately reported to police. The jury was instructed that Mr. Loomis had no firsthand knowledge as to who started the fire and that his statement regarding Petitioner could not be considered by them as evidence as to who had, in fact, started the fire. N.T. 2/4/15, at 133-134. The jury is presumed to have followed those instructions. See

Commonwealth v. Clemons, ___ Pa. ___, 200 A.3d 441, 474 (2019). Therefore, the only issue is whether Mr. Loomis' report of the fire constitutes inadmissible hearsay. Since Mr. Loomis' call was placed immediately after he observed that a fire had been set at his girlfriend's home, his statements to the 911 operator regarding the fire, like his statements regarding the assault during the first 911 call, were admissible as present sense impressions and excited utterances.

In any case, even if Officer Lundquist's testimony or the 911 recordings constitute hearsay, trial counsel's failure to raise the claims on appeal does not constitute ineffective assistance of counsel. To be eligible for relief based on ineffective assistance of trial counsel, a petitioner must establish that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. In the instant case, Petitioner has failed to establish prejudice since the challenged statements regarding the assault and previous incidents between the victim and Petitioner were merely cumulative of non-hearsay testimony offered by the victim, her son, Mr. Loomis and Officer Andrew Herman of the Middletown Township Police Department. N.T. 2/4/15, at 21-25, 28-41, 108-110; N.T. 2/5/15, at 44-69. Mr. Loomis' statements about the fire were also merely cumulative of the non-hearsay testimony of multiple witnesses, including the Commonwealth's arson expert, as well as photographic evidence. N.T. 2/4/15, at 41, 122-133, 149-155; N.T. 2/5/15, at 71-79, 95-117; Exhibits C-6, C-7.

In addition, the evidence introduced at trial was overwhelming. Prior to the assault and arson, Petitioner called the victim and left a voicemail message threatening to kill her. A copy of that recorded message was introduced at trial. N.T. 2/5/15, at 51; Exhibit C-5. Officer Herman testified that he investigated the death threat left on the victim's answering machine in January of 2014. He stated that he interviewed Petitioner, who admitted that he made some comments that "[he] probably shouldn't have made." N.T. 2/4/15, at 23-24. The testimony of the victim's son

and Officer Herman established that the Petitioner was told on multiple occasions not to contact the victim. N.T. 2/4/15, at 24-25, 31-32.

The victim's account of the assault was corroborated by Mr. Loomis, the condition of her clothing and injuries to her arms and back. N.T. 2/4/15, at 56, 112, Exhibits C-1A, C-1B, C-1C. The victim's testimony was also corroborated by Petitioner. Petitioner admitted that he was looking for the victim immediately prior to the assault and that when he learned that she was not at home, he proceeded to the Penn Warner Club where he made contact with her. N.T. 2/5/15, at 155. Petitioner told police that he believed the victim was "cheating" on him despite their breakup, and that "this time it really brought out the hate in him." N.T. 2/4/15, at 162.

Petitioner was connected to the arson by the evidence set forth above, by evidence found at the scene and by evidence removed from his person. The Commonwealth's arson expert testified that gasoline was used as an accelerant and that the gasoline was ignited with a match. Two burnt paper matches were found at the point of ignition. N.T. 2/5/15, at 109-111; Exhibit C-4. On the morning of the assault and arson, Petitioner was taken into custody. N.T. 2/5/15, at 9-11. A matchbook and sneakers were recovered from his person. Officers also noted an odor of gasoline emanating from the sneakers he was wearing. Subsequent testing confirmed the presence of gasoline on Petitioner's sneaker. N.T. 2/4/15, at 83; N.T. 2/5/15, at 17, 25; Exhibits C-16, C-12A, C12B.

The evidence established that Petitioner actively avoided speaking to police. When Sergeant Raymond Fanelli of the Falls Township Police Department tried to speak with Petitioner by telephone, Petitioner hung up. N.T. 2/4/15, at 95-98. When police attempted to stop him at the scene of the arson, Petitioner fled. N.T. 2/4/15, at 157-160.

Petitioner also gave false statements to police as to his whereabouts at the time the arson occurred. He stated that after leaving Penn Warner Club, he went to a bar and then went home and slept until 8:00 a.m. N.T. 2/5/15, at 156-157. Video security footage and a store receipt placed him at the Walmart at 4:49 a.m. N.T. 2/5/15, at 159-162; Exhibits C-13, C-14.

Given the cumulative nature of the alleged hearsay statements and the overwhelming evidence presented at trial, Petitioner has failed to establish that there is reasonable probability that the outcome of the proceedings would have been different had trial counsel challenged the admission of these statements on appeal. Having failed to establish the necessary prejudice, Petitioner is not entitled to PCRA relief.

For the reasons set forth above, this Court properly denied Petitioner's request for PCRA relief.

BY THE COURT:

DIANE E. GIBBONS, J.

2/24/20
Date